Commonwealth ex rel. Rambeau, Appellant, *v.* Rundle.
Commonwealth *v.* Collins, Appellant.

Argued May 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused February 27, 1974.

*John H. Lewis, Jr.,* with him *Morgan, Lewis & Bockius,* for Rambeau, appellant.

*Leonard Packel,* Deputy Attorney General, with him *Curtis M. Pontz,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

*Edward Blumstein,* with him *Elkman, Blumstein and Block,* for Collins, appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Michael R. Stiles,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

*Jonathan Silver,* Chairman Designate, and *John Myers,* Chairman, for amicus curiae, Prison Research Council of the University of Pennsylvania Law School.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1973:

Each of these cases, which were consolidated on appeal, presents a challenge to the procedures by which the Commonwealth revokes parole and recommits a parolee who has been convicted of a crime committed while on parole.

Appellant Emanuel Collins (Collins) pled guilty on October 5, 1964, to various counts of assault and battery, assault and battery with intent to ravish, and burglary. He was sentenced to a term of three to six years' imprisonment. At the expiration of his three-year minimum, Collins was paroled, but on June 11, 1970, while on parole, Collins was arrested for possession of narcotics. On November 7, 1970, he was convicted of the charge of possesion of narcotics and was given a probationary sentence. On December 3, 1970, the parole board, without a hearing, recommitted Collins as a convicted parole violator and he was incarcerated to serve the three remaining years of the sentence on his 1964 conviction. He was given no credit for time spent on parole under the supervision of the Board.

Appellant Peter L. Rambeau (Rambeau) was sentenced to five to ten years as a result of convictions on various charges on May 29, 1961. The sentence was effective March 8, 1961, making the expiration dates of his minimum and maximum sentences March 8, 1966 and March 8, 1971, respectively. He was paroled on March 8, 1966, but subsequently arrested on March 1, 1967, and convicted on June 5, 1967, on another charge. He was sentenced to one to two years on that charge. As a result of that conviction, a hearing was held before one member of the parole board and Rambeau, unrepresented by counsel, was recommitted as a con-

victed parole violator on July 12, 1967, and the maximum expiration date was extended to June 5, 1972. Like Collins, Rambeau was given no credit for the time spent on parole under the supervision of the Board.

Collins' case was transferred to us from the Superior Court, where he had taken his appeal from the denial of his Post Conviction Hearing Act petition challenging the parole board's action. Rambeau's case comes to us on direct appeal from the order of the Commonwealth Court dismissing the action of mandamus he brought in that court challenging the parole board's action.

Each appellant raises a challenge to the constitutionality of the Commonwealth's interpretation of the Act of August 6, 1941, P. L. 861, §21.1, added August 24, 1951, P. L. 1401, §5, as amended June 28, 1957, P. L. 429, §1, 61 P.S. 331.21a, so as to deny a convicted parole violator the right to a hearing where he would be represented by counsel before his parole can be revoked.[1]

The statute in question reads as follows: "(a) Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had

---

[1] Although Rambeau was given a hearing before his parole was revoked, the Commonwealth contends that he was not constitutionally entitled to counsel because the hearing itself was not constitutionally required.

he not been paroled, and he shall be given no credit for the time at liberty on parole. The board may, in its discretion, reparole whenever, in its opinion, the best interests of the prisoner justify or require his release on parole and its [sic] does not appear that the interests of the Commonwealth will be injured thereby. The period of time for which the parole violator is required to serve shall be computed from and begin on the date that he is taken into custody to be returned to the institution as a parole violator."

While it is true that the statute, by its language, does not explicitly provide that convicted parole violators receive a hearing before parole is revoked, as distinguished from the hearing provided to technical parole violators by § (b) of the same statute, 61 P.S. 331.21a (b), this is not simply a question of statutory interpretation. A hearing is required before parole is revoked as a matter of constitutional due process for convicted parole violators as well as technical parole violators.

In so ruling, we now overrule our decision in *Commonwealth ex rel. Thomas v. Myers,* 419 Pa. 577, 581 215 A. 2d 617 (1966), where we cited *Escoe v. Zerbst,* 295 U.S. 490, 55 S. Ct. 818, 79 L. Ed. 1566 (1935), for the proposition that: ". . . one on parole has no constitutional right to a hearing prior to the revocation of parole, and that whatever right exists in a particular jurisdiction derives solely from the existence of statutory provisions requiring a hearing."

The analysis contained in *Escoe v. Zerbst, supra,* to the effect that there is no constitutional right to a hearing upon revocation of parole because "probation or suspension of parole comes as an act of grace to one convicted of a crime," was rejected by the United States Supreme Court in its recent opinion in *Morrissey and Booher v. Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593 (1972), where the court, per Chief Justice BURGER,

held that a hearing was required before parole was revoked. As the court explained:

"As Mr. Justice BLACKMUN has written recently, 'This Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege".' Graham v. Richardson, 403 U.S. 365, 374 (1971). Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 (1951) (FRANKFURTER, J., concurring), quoted in Goldberg v. Kelly, 397 U.S. 254, 263 (1970). The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67 (1972). Once it is determined that due process applies the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as of the private interest that has been affected by governmental action.' Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

"We turn to an examination of the nature of the interest of the parolee in his continued liberty. The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement to a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases the parolee faces lengthy incarceration if his parole is revoked.

"We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege'. By whatever name the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

"Turning to the question what process is due, we find that the State's interests are several. The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty. Release of the parolee before the end of his prison sentence is made

with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

"Yet the State has no interest in revoking parole without some informal procedural guarantees. Although the parolee is often formally described as being 'in custody', the argument cannot even be made here that summary treatment is necessary as it may be with respect to controlling a large group of potentially disruptive prisoners in actual custody. Nor are we persuaded by the argument that revocation is so totally a discretionary matter that some form of hearing would be administratively intolerable. A simple factual hearing will not interfere with the exercise of discretion. Serious studies have suggested that fair treatment on parole revocation will not result in fewer grants of parole. . . ."

The Commonwealth argues that since there is no question but that both appellants were convicted of crimes committed while on parole, the parole board has no discretion as to the length of time of incarceration. Consequently, there is nothing to hold a hearing about because there is no pertinent evidence to introduce. However, although the length of time of any incarceration imposed by the Board is automatic, the fact of incarceration itself is not. Whether a convicted parole violator is to be recommitted by the Board is left to the discretion of the Board. Act of August 6, 1941, P. L. 861, §21.1, as amended, Act of June 28, 1957, P. L. 429, §1, 61 P.S. §331.21a.

The need for a hearing is in no way eliminated by the existence of a conviction of record. The Parole

Board, in the exercise of its discretion granted by statute, should hear relevant facts or circumstances, outside the record of the conviction, which will enable them to make the difficult judgment involved. See *Commonwealth ex rel. Hendrickson v. State Board of Parole*, 409 Pa. 204, 185 A. 2d 581 (1962). In *Mays v. Nelson*, 323 F. Supp. 587 (N.D. Calif. 1971), the court held that parolees were entitled to the assistance of counsel at a parole revocation hearing and aptly observed:

"Respondent argues that in this case such procedural requirements are completely unnecessary as all the facts had been presumably 'tried' in a court of law attendant with *all* elements of due process. To compel the Adult Authority to hold another factual hearing, he argues, would be a needless retrial of the same facts.

"This line of reasoning, while superficially sound, fails to recognize a significant factor. At his state trial for disturbing the peace, the kinds of 'proof' he later wanted to present could have had no effect on the outcome of the trial. The mitigating fact that the incident was a family quarrel and that new living arrangements had been made could have no effect on the ultimate finding of guilt or innocence. Also the misinformation regarding the supposed charge of assault with a deadly weapon played no part in his criminal trial. Thus, even assuming petitioner had had a full trial on the facts in state court, rather than conviction after a simple guilty plea, the facts relevant to a determination of his parole status would not have come to light." Id. at 589 (emphasis in original); accord *Hewett v. North Carolina*, 415 F. 2d 1316, 1324 (4th Cir. 1969). *Hewett*, in recognizing the right to counsel at a probation hearing, rejected any distinction regarding due process rights between a technical and a convicted probation violator and asserted: ". . . substantial rights are litigated in every North Carolina

revocation of probation proceeding, irrespective of the preciseness of the claimed violation or the complexity of the factual inquiry." Id. at 1324. See also *Gunsolus v. Gagnon,* 454 F. 2d 416 (7th Cir. 1971), and *Hahn v. Burke,* 430 F. 2d 100, 104 (7th Cir. 1970).

Appellants also contend that they are entitled to the assistance of counsel at their parole revocation hearings. We agree. It is well-settled that the assistance of counsel ". . . is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S. Ct. 254, 257 (1967); accord *Coleman v. Alabama,* 399 U.S. 1, 7, 90 S. Ct. 1999, 2002 (1970).[2] *Argersinger v. Hamlin,* 407 U.S. 25 (1972).

Consequently, there can be no doubt that these appellants are entitled to representation by counsel at the hearings which must be held. In *Mempa, supra,* the Supreme Court held that counsel was required at a hearing at which his probation is revoked and sentence is imposed because it was a "critical stage" in the proceedings. We have already held, in *Commonwealth v. Johnson,* 428 Pa. 210, 236 A. 2d 805 (1968), that the initial sentencing by the court is a critical stage in the criminal proceeding at which a defendant is entitled to counsel and a chance to present evidence in his behalf. What we said in *Johnson* is also pertinent to the instant case: "Initially, the Commonwealth contends that this proceeding was so ministerial and

---

[2] In *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999 (1970), the United States Supreme Court held that a preliminary hearing is a "critical stage" and thus a defendant is entitled to court-appointed counsel. Surely if counsel is constitutionally required at a preliminary hearing, where defendant is not faced with a possible deprivation of liberty, it becomes even more compelling that he have the assistance of counsel during the "critical stage" of a parole revocation hearing, where defendant faces an imminent deprivation of liberty.

formalistic that it was not such a critical stage as to require the presence of counsel. With this position we cannot agree. Although it may be true that in the present case nothing was said on appellant's behalf at the October 19th proceeding, we would be loathe to hold that nothing of aid to the client *could* have been said by counsel. Perhaps just a few words, if spoken effectively enough, might have persuaded the court to reconsider its finding of murder in the first degree, particularly since the court realized that the facts closely approximated second degree murder, and in fact suggested that appellant might be paroled at the end of twenty years. To say that this proceeding, the very last contact appellant had with the court before his cell door slammed shut, perhaps for life, is not a critical stage of the litigation, substantially affecting [appellant's] rights, is to completely ignore reality." (Emphasis in original.) At Pages 215-216.

We held in *Commonwealth ex rel. Remeriez v. Maroney,* 415 Pa. 534, 204 A. 2d 450 (1964), that a defendant is entitled to counsel at a hearing before being sentenced to imprisonment after revocation of a prior suspended sentence and probation. Recently we extended the same procedural rights to the revocation of parole of a technical parole violator. *Commonwealth v. Tinson,* 433 Pa. 328, 249 A. 2d 549 (1969).

Just as the aid of counsel might be crucial to a defendant in the position of Johnson, Remeriez or Tinson, so, too, the aid of counsel could be crucial to a defendant in the position of the appellants in the instant cases. If there exist mitigating circumstances surrounding the offenses which they committed while on parole, an attorney's aid could be crucial to develop these circumstances before the Board. See *Mempa v. Rhay, supra,* at 135, where the court described the ". . . necessity for the aid of counsel in marshalling the facts, introducing evidence of mitigating circum-

stances and in general aiding and assisting the defendant to present his case as to sentence. . . ."

Appellants also contend that the provision prohibiting the parole board from crediting them with the time they spent at liberty on parole constitutes double jeopardy in violation of the Constitution. According to Rambeau's argument, the time which appellants spent at liberty on parole was clearly "punishment" since the liberty was restricted by the rules and regulations of the parole board. According to Collins, this provision constitutes a bill of attainder because the Board is, in effect, extending appellant's sentence without trial. We are unpersuaded, and adhere to the decision we last reached in *Commonwealth ex rel. Thomas v. Myers, supra,* for the reasons stated therein.

Since we have determined that the appellants are entitled to hearings at which they must be represented by counsel, we must also determine whether, as appellant Rambeau contends, a quorum of the parole board must be present in order to insure that the hearing is valid.

The Commonwealth Court relied on the Act of August 6, 1941, P. L. 861, §22, 61 P.S. 331.22, which provides: "In granting and revoking paroles, and in discharging from parole, the members of the board acting thereon shall not be required to personally hear or see all the witnesses and evidence submitted to them for their action, but they may act on report submitted to them by their agents and employes, together with any pertinent and adequate information furnished to them by fellow members of the board or by others."

However, the United States Supreme Court's opinion in *Morrissey and Booher v. Brewer, supra,* seems to indicate that although the entire parole board need not be present at an initial hearing held to provide an independent "evaluation of whether reasonable cause

exists to believe that the conditions of parole have been violated,"[3] a second hearing, denoted "The Revocation Hearing" in *Morrissey,* requires that the whole board be present.

The Supreme Court described this hearing as follows: "There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest the violation does not warrant revocation." 408 U.S. at 487,88.

Although the court makes clear that it did not intend to write a specific code of procedure, it does state that the minimum requirements of due process include: "(c) opportunity to be heard *in person* and to present witnesses and documentary evidence." (Emphasis added). 408 U.S. at 489. It seems elementary that the right to be heard in person becomes meaningless unless the convicted parole violator is heard personally by the people who must make the decision regarding his recommitment, i.e., the entire parole board, not by some third party, or by only one member, who then relates the convicted violator's case, second hand, to the rest of the board.

Orders reversed and cases remanded for new revocation hearings consistent with this opinion.

---

[3] Of course, in the case of convicted parole violators, as distinguished from technical violators, no such initial hearing need be held because their trials, at which they were convicted of committing crimes while on parole, serve the same purpose.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While I concur in the holding of the Court on the three issues presented (the right of the convicted parolee to a revocation hearing; the right of the convicted parolee to counsel at that hearing; and the right of the parolee to insist on the presence of the majority of the Parole Board), I deem it appropriate to add the following observations.

The Supreme Court of the United States in *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484 (1972), a case involving a "technical" violation of parole, divided the requirements of due process in parole revocation proceedings into two hearings. The first, a "preliminary hearing", is to be conducted before an impartial official prior to reimprisonment of the parolee and is to inquire only into whether there exists probable cause to believe that a condition of parole has been violated (i.e., in the cases now before us, whether the parolee has been convicted of another crime). The second hearing is to consider the consequences of the violation, i.e., whether the parolee should in the best interests of society be returned to prison.[1]

In one of the two cases presently on appeal, the appellant Rambeau was already incarcerated as a consequence of his second conviction when parole authorities took steps to revoke his parole from imprisonment following the first conviction. The opinion of the Court should not, I think, be read as requiring the parole authorities to perform the useless task of holding a "preliminary hearing" to determine if probable cause exists to believe that a parolee such as Rambeau has violated his parole.

The other appellant, Emanuel Collins, was not imprisoned following his second conviction, but instead

---

[1] For a discussion of the holdings and implications of *Morrissey v. Brewer*, see The Supreme Court, 1971 Term, 86 Harv. L. Rev. 1, 95-103 (1972).

was placed on probation. It would seem clear, under *Morrissey*, that in such a case a "preliminary hearing" will be required. Apparently, the Court's present holding that even a convicted parole violator is entitled to free counsel if he is indigent would extend to this "preliminary hearing". One might well ask what purpose the lawyer would serve in such a hearing. The only issue is the fact of the conviction itself, and as to that issue it can safely be said that there is little, if any, risk of injustice. Parole officials may be expected not to be in error as to the record fact of a subsequent conviction,[2] and in that rare case in which somehow error occurs, I should suppose the parolee himself, even without a lawyer, would make vigorous protest that he had not in fact been convicted a second time.

This Court has held that technical parole violators, if indigent, have a right to free counsel. *Commonwealth v. Tinson*, 433 Pa. 328, 249 A. 2d 549 (1969).[3] That decision relied heavily on *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336 (1967), a case holding that the indigent state criminal defendant is entitled to free counsel at proceedings to *revoke his probation and to impose a sentence*. The Supreme Court of the United States in *Morrissey*, however, has cast grave doubt on the validity of resting a right to counsel at parole revocation proceedings on the authority of *Mempa*. Said Chief Justice BURGER, speaking for the Court: "We begin with the proposition that the revocation of parole is not

---

[2] The distinction between a "convicted violator" and a "technical violator" may result in important differences in procedure and in due process requirements in the revocation process. As pointed out in the comprehensive Comment, The Parole System, 120 U. of Pa. L. Rev. 282, 342 n. 386 (1971), "[p]resumably the distinction is drawn because factual issues have already been determined in the case of a convicted violator." The same point is made in Mr. Justice EAGEN's concurring and dissenting opinion herein.

[3] The writer was not a member of the *Tinson* court.

part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceedings does not apply to parole revocations. Cf. Mempa v. Rhay, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence." *Morrissey*, 408 U.S. at 480, 33 L. Ed. 2d at 494. The Supreme Court went on to observe that "[o]nce it is determined that due process applies, the question remains what process is due." *Id.* at 481. Thus, the holding of *Morrissey* that due process in parole revocation requires "an effective but informal hearing" is not to say that such a hearing must have the same requirements that attach to due process in other circumstances and in other proceedings. And, of course, the Court ended its opinion in *Morrissey* by observing that it was not called upon to decide whether the due process clause of the Fourteenth Amendment would require appointment of counsel to represent indigent parolees; the concurring opinion of Justice BRENNAN advocates only that counsel be permitted to be present, citing *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287 (1970), and leaves open the question "whether counsel must be furnished the parolee if he is indigent." 408 U.S. at 491. Only Mr. Justice DOUGLAS, dissenting in part, appeared to be of the blanket opinion that "the parolee should be entitled to counsel", 408 U.S. at 498, and that observation was made in the context of "violation of a condition of parole" as distinguished from "commission of a new offense," 408 U.S. at 497.

A reading of the *Morrissey* opinions together with the Supreme Court's decision in *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530 (1972) (decided approximately two weeks earlier) indicates to me that the right to counsel, including that of an indigent to assignment of state-provided counsel, may well terminate at the boundary of proceedings denominated "criminal".

It is doubtful, therefore, that this court's decision in *Tinson*, supra, was required as a matter of federal constitutional law.[4] Nevertheless, in view of the absence of controlling authority on the point, I do not quarrel with the *Tinson* holding that the *technical* violator is entitled to representation by counsel and, if indigent, to the appointment of free counsel.[5]

The basic issue before the Court in the instant cases is whether the holding of *Tinson* should be extended to the *convicted* parole violator. Given *Tinson*, I see little to be gained by not making that extension with respect to what *Morrissey* denominates as the second hearing to which a convicted violator is entitled.[6]

The primary and perhaps only value of counsel at a revocation hearing for the convicted violator will be the ability of a trained legal mind to muster facts and make arguments which might induce the Parole Board

---

[4] This is not to suggest, of course, that the holding would necessarily be erroneous as a matter of state constitutional law. See *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A. 2d 487 (1971).

[5] I disagree, however, with the Court's Sixth Amendment bases for this right. *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 336 (1967) [revocation of probation prior to sentencing] and *Coleman v. Alabama*, 399 U.S. 1, 26 L. Ed. 2d 387 (1970) [preliminary hearing], relied on by the court, are inapposite. The right to counsel has never been held to be applicable in a post-sentencing situation such as the ones at bar. Revocation of parole, as the U. S. Supreme Court said in *Morrissey*, "is not part of a criminal prosecution", 408 U.S. at 480. I would bottom the right entirely on due process, to the end that the revocation hearing may provide a "meaningful opportunity to be heard". See *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113 (1971). Cf. *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287 (1970).

[6] The issue decided by this Court in *Tinson* is now awaiting decision in the Supreme Court of the United States. See *Gagnon v. Scarpelli*, 408 U.S. 921 (right to counsel on revocation of probation where sentence has been imposed previously). I would personally prefer to withhold our opinions in the instant case until the Supreme Court has spoken.

not to reimprison the violator. Counsel will serve the same function for the technical violator, but in that case will be of value as well in resolving the first question—the existence of a parole violation. Were we to draw a line between the right to counsel of a technical violator and that of a convicted violator, we would necessarily equip the former with counsel to argue mitigating circumstances to the Board, while at the same time denying counsel to fulfill the same role for the latter. If we think due process requires the first (*Tinson*), then I am of the opinion that it must require the same in the cases now before us.[7]

_____

[7] See The Parole System, 120 U. of Pa. L Rev., *supra*, at 352-356. The author of the comment properly points out that limits on counsel's role and the extent of his activity may legitimately be imposed by parole boards. *Id.* at 354 n. 464.

_____

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

In *Morrissey and Booher v. Brewer,* 408 U.S. 471, 92 S. Ct. 2593 (1972), upon which the majority mainly rely for their decision in this case, the United States Supreme Court ruled that before a State may revoke the parole of an alleged technical parole violator (i.e., one who violated conditions of parole), constitutional due process requires that the parolee receive adequate written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses before a neutral and detached body, such as a traditional parole board, and a statement of findings by the hearing body detailing why the parole is revoked. It did not rule as the majority opinion indicates that a hearing and the other protective procedures mentioned are required if the revocation is based on the parolee's conviction of a crime while on parole. Nonetheless, I agree with the

majority that such procedures are wise and should be followed in all revocation parole cases. This would not impose too great or unfair a burden on the Commonwealth or the taxpayers.

The above conclusion is also influenced by the fact that, even where the revocation is grounded on the commission of a crime while on parole, the Board of Parole may in its discretion abstain from entering a revocation order. See The Act of August 6, 1941, P. L. 861, §21.1, as amended, 61 P.S. §331.21a. At such a hearing, while the parolee may not relitigate issues already determined against him in another forum, such as the commission of the crime (see *Morrissey and Booher v. Brewer*, supra), he will have the opportunity of presenting evidence to influence the Board's discretion in his favor.

However, I strongly disagree with the majority's ruling that a convicted parolee must be given the assistance of legal counsel at a revocation hearing. In *Morrissey*, the Court specifically refrained from resolving whether the assistance of counsel is required at a revocation parole hearing based on technical violations. But, it did emphasize the required hearing need not be before a board including judicial officers or lawyers, and also significantly said parole revocation "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480, 92 S. Ct. at 2600. Furthermore, the court's order in *Morrissey* impliedly indicates legal assistance is not constitutionally required.

In *Morrissey* the State asserted in its brief that the parolees involved had been given a hearing (without counsel) before the Parole Board and that the parolees had admitted to the Board violating the conditions of parole (again without counsel). Since the record failed to include evidence sustaining the State's assertion as

to this the Court remanded the record for further proceedings and said: "If it is determined that petitioners [the parolees] admitted parole violations to the Parole Board . . . and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter. If the procedures . . . are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases." It appears to me that if the assistance of counsel is constitutionally required, the Court would not have ordered such a remand, but would have reversed the orders of revocation forthwith. 408 U.S. at 490, 92 S. Ct. at 2605.

I am not unmindful that in *Commonwealth v. Tinson*, 433 Pa. 328, 249 A. 2d 549 (1969), we held that at the hearing sur revocation of parole for technical violations the parolee must be provided with the assistance of counsel. Our decision in *Tinson* apparently gives the parolee more than is constitutionally required. Cf. *Morrissey and Booher v. Brewer.* Regardless of this, a substantial difference exists between the situation where the revocation of parole is based on technical violations and that where the revocation is based on the commission of a crime while on parole. In the former instance, the truth of the commission of the violations has never been litigated or established and if the parolee denies such violations occurred, in all fairness he should have the opportunity to refute the charges with the assistance of counsel. However, in the situation where the commission of crimes, while on parole has been established either by trial or guilty plea in another forum, this issue may not be relitigated in the parole revocation hearing. But since the parolee may offer evidence at such a hearing of extenuating circumstances to influence the Board's decision, the question may arise, as to how such a hearing differs from the proceeding where sentence is imposed by a court following

a conviction of criminal charges and in which counsel is constitutionally required. The simple answer is that, unlike a sentencing hearing, a revocation parole hearing "is not part of the criminal prosecution . . . and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480, 92 S. Ct. at 2600.

Mr. Chief Justice JONES joins in this concurring and dissenting opinion.

--------

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I concur in the majority except on the issue of a defendant's right to credit for time spent on parole. Under no circumstances can a defendant be deprived of his freedom, either totally or partially, beyond a period of time equivalent to the maximum sentence imposed by judicial authority.

An individual who receives a maximum sentence and is never paroled serves only the maximum period and is not subjected to any partial limitation of his freedom for any period of time other than the maximum period.

An individual who is paroled for a period of time and then returned to serve the remaining balance of his maximum term fulfills his obligation of total incarceration for the *maximum* period originally authorized by his judgment of sentence *and in addition* has suffered the partial limitation of his freedom during the period of parole.

The cumulative effect constitutes a total penalty *in excess* of the maximum penalty originally imposed by the judgment of sentence. Such a result is without legislative or constitutional authority.