**Judith POTTS, mother and next friend of Robin Potts et al., Plaintiffs,**

v.

**Bennie WRIGHT et al., Defendants.**

**Civ. A. No. 72–680.**

United States District Court,
E. D. Pennsylvania.

March 30, 1973.

---

Martin Mendelsohn and Gordon L. Rashman, Jr., Delaware County Legal Assistance Association, Inc., Chester, Pa., for plaintiffs.

Edward R. Murphy, Ralph P. Higgins, Philadelphia, Pa., Arthur Levy, Chester, Pa., William D. March and Michael F. DelFra, Media, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs bring this civil rights suit pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1988 (1970) to recover for the alleged deprivation of their Fourth Amendment right to be secure in their persons against unreasonable searches and seizures. Before us are defendants' motions to dismiss for failure to state a claim. Jurisdiction is conferred by 28 U.S.C. § 1343(3). No jurisdictional amount is required. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

Plaintiffs are eight female students who were subjected to a strip search on March 3, 1972 while attending Pulaski Junior High School in Chester, Pennsylvania. The search was conducted on the complaint of a fellow student that her ring was missing. Nine (9) of the eleven (11) defendants have moved to dismiss the complaint. Two of the defendants moving to dismiss are political subdivisions of the state, the County of Delaware and the City of Chester; one defendant, the School Board of the Chester School District, is an agency of the state. Defendant Joseph M. Bail is the Chief of Police of the Chester Police Department; defendant John J. Vaul is the Superintendent of the Chester School District. Messrs. Bail and Vaul are sought to be held vicariously liable for the actions of their subordinates. The remaining defendants are joined because of their direct involvement with the incidents surrounding the search. These defendants are the principal and assistant principal of the school and the two police officers who responded to the school official's phone call reporting the theft of the ring.

The complaint, the allegations of which we must accept as true for purposes of deciding these motions to dismiss, Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), alleges that on March 3, 1972, a fourteen year old discovered while in class at Pulaski that her ring was missing. She told the principal, defendant S. Wesley Rhoades, Jr., who was in the classroom at the time. When the ring was not found after a search of the room where the girl thought she might have left the ring, the principal announced that the police would be called if the ring was not returned. The ring was not returned, and the principal and the assistant principal, Raymond J. Hagy, Jr., requested the aid of the police.

Police officers Wright and Charleston, employees of the City of Chester Police Department, arrived at the school at one o'clock in the afternoon in response to the call from the school officials. After questioning the students, the police officers called defendant Laverne Rambo and asked that defendant Bonita Collins be sent to the school to conduct a search. Both Rambo and Collins are employees of the County of Delaware. Over pro-

tests from the minor plaintiffs, police-woman Collins searched each plaintiff requiring them to strip to their bras and panties. It is alleged that the search was carried out by the defendant Collins after threats of physical coercion were made to the plaintiffs by the defendants. Among the threats allegedly made was that Collins had a black belt in karate and that, therefore, plaintiffs should not cause Collins any difficulties. After the search, which proved to be fruitless, plaintiffs were taken to their homes by members of the Chester Police Department.

It is alleged that no search warrant had been issued to conduct the search and that there existed no probable cause for the search.

■ We must grant the motions of the County of Delaware, City of Chester and the School Board to dismiss the complaint. These defendants are not persons within the meaning of §§ 1983 and 1985(3). Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The Third Circuit seems to have taken this same view even in the case of a suit for injunctive relief. Educational Equality League v. Tate, 472 F.2d 612 (3 Cir. 1972). Although the plaintiffs have argued persuasively that political subdivisions should be held liable for both injunctive relief and damages, the case law in the Third Circuit is clear. But see Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), rev'd on other grounds, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (Supreme Court 1973); Schnell v. City of Chicago, 407 F.2d 1034 (7 Cir. 1969). The doctrine in *Monroe* is currently being re-examined by the Supreme Court. See Moor v. Madigan, 458 F.2d 1217 (9 Cir. 1972) petition for cert. granted sub. nom. Moor v. Alameda City, 409 U.S. 841, 93 S.Ct. 66, 34 L.Ed.2d 80 (1972). Until the Supreme Court expresses a view limiting *Monroe,* we are bound to follow the Third Circuit's view of that case.

■ The motions of defendants Vaul and Bail to dismiss, however, must be denied. A defendant will not be held liable under the Civil Rights Act of 1871, 42 U.S.C. § 1983 unless the defendant was personally involved in causing the deprivation of a constitutional right or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights, and he is negligent in failing to take action to prevent the deprivations. See Wright v. McMann, 460 F.2d 126, 135 (2nd Cir.) cert. denied 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); Mills v. Larson, 11 Crim.L. Rptr. 2538 (August 8, 1972). We will leave until trial or until motions for summary judgment are made with supporting affidavits the question whether defendants Bail or Vaul are charged by state statute or regulation with having such familiarity with the conduct of their subordinates that it can be said that they should have known that their subordinates were depriving persons of constitutional rights and that they were negligent in failing to take corrective action.

■ It follows from our discussion thus far that we must also deny defendants Charleston, Wright, Rhoades and Hagy's motion to dismiss. A person need not actually undertake an illegal search to be liable for violating another's constitutional rights. It is sufficient that a person act in such a manner as to be either a direct or proximate cause of the constitutional deprivation. Thus, it is of no moment that defendants Charleston and Wright did not conduct the actual physical search in this case. The complaint alleges that the defendants used threats to cause the search to occur. This showing by the plaintiffs would be sufficient to find liability.

■ Finally, we consider Rhoades and Hagy. Since we do not understand school officials to be vested with authority under Pennsylvania law to conduct searches of students' persons, an assess-

ment of school officials liability under § 1983 is similar to that of a private person. "It is enough [to have action under color of state law] that he [the defendant] is a willful participant in joint activity with the State or its agents." United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). See also Adickes v. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Although particular action taken by a state official which is outside the authority vested in him by the state is action under "color of state law", Monroe v. Pape, *supra.*, there must nevertheless exist some authority vested by the state in the defendant to act in regard to the constitutional right of which the plaintiff contends he has been deprived. Thus, it is the nature of the act taken by the state official and not the status of the person as a state official which provides the element of "under color of state law." If school officials have absolutely no authority under state law to search any individual, their searching of students without the aid of the police would be a battery or possibly an invasion of the right of privacy under state law, and would not constitute a civil rights violation. According to the complaint this was not the circumstance in this case.

■ The complaint alleges that defendants Rhoades and Hagy also threatened the plaintiffs. At oral argument on these motions it was stated by counsel for Rhoades and Hagy that all the defendants did was to call the police for the purpose of reporting the ring as stolen. While this may in fact be the case, we cannot assume that this is all these defendants did since the complaint alleges more. And the complaint is the master of the truth at this stage of the litigation. That we deny these defendants' motions to dismiss should not be interpreted as condemnation by us of defendants' action per se in calling the police. Reporting a crime to the police is a duty of every citizen including school officials. We do not wish to deter such conduct by citizens if school officials

feel that, in the context of a particular case, reporting a theft is the correct course of action. Also, school officials should not be held for unlawful actions taken by police simply because the school officials called the police. Nor should school officials be required to prevent unlawful police conduct regardless of whether the school officials called the police or the police acted out of their own initiative. As with other citizens, school officials fulfill their duty by reporting the unlawful police activity to the police officers' superiors. But even the failure to report the police officers' unlawful activities will not give rise to civil rights liability. Therefore, in the context of the facts as pleaded, which do not allege that the school officials conducted the actual physical search, the school officials, who were alleged to have been present and to have had knowledge of the actions being taken by the police, can be found liable only if they participated with the police in making statements or taking actions, the natural consequence of which could be said to have caused the plaintiffs to succumb to the searches, or if the evidence establishes an understanding or agreement between the school officials and the police to deny plaintiffs their constitutional right.

■ The § 1985(3) count will be dismissed against all the defendants since there are no allegations of "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

## ORDER

Now, March 30, 1973, it is ordered:

1. The motions to dismiss of defendants Bennie Wright, Joseph M. Bail, John Charleston, S. Wesley Rhoades, Jr., Raymond J. Hagy, Jr., and John J. Vaul are denied.

2. The motions to dismiss of defendants Delaware County, City of Chester and School Board of Chester School District are granted.