John D. JONES

v.

Robert L. JOHNSON, Superintendent State Correctional Institution Graterford, Pa., et al.

Civ. A. No. 74–369.

United States District Court, E. D. Pennsylvania.

Oct. 29, 1975.

status had changed from that of a "convicted violator" [1] to that of a "technical violator"; [2] (2) their failure to grant him a satisfactory hearing at any time during a period of some eighteen months; and (3) the resultant continued incarceration in violation of plaintiff's civil right to be free from deprivation of liberty without due process of law, in violation of the fourteenth amendment. Because we find that the defendants are not protected by immunity from suit under the circumstances presented here, and because material facts remain at issue, we will deny both motions and will set forth further proceedings which are to follow.

## II.   FACTUAL BACKGROUND

Plaintiff John Jones, a former prisoner now free on parole, originally sued on account of alleged civil rights violations, pursuant to 42 U.S.C. § 1983 and § 1985. The jurisdiction of this Court was invoked under 28 U.S.C. § 1343. We granted him the right to proceed in forma pauperis, and appointed a student from a local law school to represent the prisoner, pursuant to Rule 9½ of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania (Local Rules). Thereafter, several defendants and several counts were dismissed by stipulation, and leave to file an amended complaint was granted. Plaintiff propounded interrogatories, which were answered, and cross-motions for summary judgment were then filed.

The amended complaint charged that Jones, an individual resident of Pennsylvania then residing at Graterford State Correctional Institution, either as a prisoner of the Commonwealth or as a parole violator under the direct supervision of the Parole Board, had been denied due process of law, first, by the failure of the Board to grant him a parole hearing on several specific occasions and, second, by his continued detention when he had not been afforded a hearing

Joseph F. Tilghman, Jr., Jack Levine, Martin Vinikoor, Philadelphia, Pa., for plaintiff.

Glenn Gilman, Robert Greevy, Lawrence Barth, Dept. of Justice, Cmwlth. of Pennsylvania, Harrisburg, Pa., for defendants.

### OPINION AND ORDER

FOGEL, District Judge.

### I.   PRELIMINARY STATEMENT

Before us are cross-motions for summary judgment in a civil rights suit seeking damages for (1) failure of the members of the Pennsylvania Board of Probation and Parole (Parole Board) to ascertain that plaintiff's parole violator

---

1.  61 P.S. § 331.21a(a).

2.  61 P.S. § 331.21a(b).

in line with the standards set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The defendants are Robert Johnson, the Superintendent of Graterford; Richard Lindsey, the Chairman of the Parole Board; and William Boor and William Butler, Acting Chairmen of the Parole Board. Each defendant was sued individually and in his official capacity. At the hearing on the summary judgment motions, it was stipulated that the complaint be dismissed as to Johnson. Therefore, only Lindsey, Boor and Butler remain in the action as defendants.

The relief sought consists of (1) a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that defendants' actions or omissions violated plaintiff's civil rights; (2) a preliminary and permanent injunction (a) to compel removal from the Parole Board files of any reference to certain acts committed by him for which he was subsequently convicted while in prison during the allegedly illegal period of incarceration, and to bar consideration of those events in any determination of his parole status, (b) to compel recomputation of a new maximum release date to reflect his unconstitutional detention of four and one-half months and (c) to prohibit any punishment or retaliation for filing this action; and (3) compensatory damages of $3900.00 jointly from the defendants. It was agreed at the summary judgment argument that only damages remained at issue, as all other relief had been rendered moot by plaintiff's release on parole.

Certain facts are not in dispute. A recitation of them will provide the background of this matter. On February 15, 1972, plaintiff was relased on parole from the State Correctional Institution at Graterford, Pennsylvania (Graterford). Two days later he was arrested on charges of larceny, receiving stolen goods and operating a motor vehicle with stolen license plates. No trial was ever held on these charges, and they were discharged in June of 1973. On March 17, 1972, Mr. Jones was arrested and detained on charges of larceny of an automobile, operating an automobile without the consent of the owner, and receiving stolen goods. He was tried and convicted of these charges on April 11, 1972, and, on April 17, 1972, he was sentenced to five years on probation. This conviction was appealed on April 20, 1972, and a writ of certiorari was granted by Judge Anderson of the Court of Common Pleas for Philadelphia County on August 17, 1972, which resulted in vacation of the conviction; petitioner was then ordered to be discharged.

On March 23, 1972, a warrant for parole violations had been lodged by the Parole Board. The basis of the warrant was a change of address and the failure to notify the parole officer of the arrest on February 17. On May 22, 1972, the plaintiff was ordered returned to the prison for a hearing on his parole status. He was returned on June 15, 1972, was given a hearing on August 9, 1972, and was ordered recommitted as a convicted parole violator on September 13, 1972.

Mr. Jones was involved in an altercation at the prison in November, 1972. However, no charges were filed for approximately two months. His trial and conviction on those charges did not occur until July 25, 1974.

On January 4, 1973, the Clerk of Quarter Sessions for Philadelphia County sent a letter to the prison informing the prison officials of the vacation of the conviction and the discharge order. This was admitted to have been received by a parole specialist on or before January 8, 1973. Coincidentally or otherwise, a detainer on charges arising out of the November, 1972, prison incident was lodged on January 8, 1973.

Parole Board reviews were held on several occasions. The first one, scheduled in February, 1973, was cancelled because the prisoner was still confined in maximum security because of the November, 1972, incident. He was seen on April 5 and August 8, 1973, on which occasions reparole was refused because

of the open charges. Additional prison misconduct occurred in late 1973, but no charges were ever lodged.

The "official notification"[3] of vacation of the April 17, 1972 conviction was received on March 18, 1974. The Parole Board reaffirmed its recommitment action of September, 1972, at this time, but as a technical violator, and listed the case for hearing. A Board member saw plaintiff on April 4, 1974, and the case was then listed for a hearing by a quorum of the Board. The first hearing was continued when Mr. Jones failed to appear, and a full hearing was then held on June 5, 1974. At an Executive Session on June 13, 1974, the Board voted to recommit plaintiff as a technical violator for changing residence without notice, to reparole on June 26, 1974, and to require that the detainer be answered. Trial on the charges listed in the detainer was held on July 25, 1974, and the Board was notified on the following day of the imposition of a sentence of one to three years, with an effective date of November 10, 1972. Thus, the minimum release date was November 10, 1973, and the maximum date was November 10, 1975.

An interview before a Board member was thereafter held on August 7, 1974, and, in an Executive Session held on August 20, 1974, the Board voted to parole as of August 28, 1974.

Plaintiff's maximum release date for the sentence from which he was originally paroled had been modified from December 23, 1975, to January 25, 1976, a difference of one month and two days, by Board action on September 13, 1972. This date was recomputed to the original maximum release date by the Board on March 18, 1974, the date of receipt of official notification of vacation of the April 17, 1972 conviction.

### III. DISCUSSION

■ Pennsylvania law distinguishes between and defines "convicted parole violators" and "technical parole violators." A convicted violator is

[a]ny parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record . . . ..

61 P.S. § 331.21a(a). Such status cannot be determined, clearly, until after a conviction or entry of a plea. A technical violator is

[a]ny parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record . . . ..

61 P.S. § 331.21a(b). It is apparent from the statutory language that a parolee who is arrested on charges of commission of a crime remains a technical violator until there is the appropriate adjudication of guilt to change his status to that of a convicted violator. The simple lodging of charges does not render a parolee a convicted violator. *See Commonwealth ex rel. Thomas v. Myers*, 419 Pa. 557, 581–582, 215 A.2d 617, 620 & n. 1 (1966), *rev'd on other grounds, Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973). It is only when a conviction has been returned or a plea of guilty or nolo contendere has been entered that the status and treatment of a parole violator can be changed.

■ The Supreme Court has held that a state parolee is entitled to at least the minimum rights of due process up-

---

3. Official notification refers to receipt of a certified copy of the court order.

996

on revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The minimum rights and procedural guarantees include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense.

*Id.* at 489, 92 S.Ct. at 2604. This holding represented a change from the position which had been taken in *Escoe v. Zerbst*, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) (parole is a privilege which may be summarily revoked). The Pennsylvania Supreme Court had relied on *Escoe* when, in 1966, it held that there were no constitutional requirements for hearings and other protections when parole was revoked, and so the statutory or regulatory protections were the only one required. *Commonwealth ex rel. Thomas v. Myers*, 419 Pa. 577, 215 A.2d 617 (1966). This holding was explicitly overruled in 1974, on the basis of *Morrissey*. *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973). In *Rambeau*, the court held that a hearing is required before parole is revoked as a matter of constitutional due process for convicted parole violators as well as for technical parole violators.

Finally, there were regulations of the Board of Probation and Parole, adopted on August 4, 1972, approximately five days prior to Mr. Jones' first hearing, which outlined in detail the procedures to be followed upon violation of parole conditions. 37 Pa.Code §§ 71.1–.5. A technical violator receives a hearing, under these regulations, while a convicted violator does not.

We may, at this point, draw several conclusions about the requirements relating to hearings for parole violators in Pennsylvania. *First*, at the time that plaintiff originally was incarcerated after revocation of parole, the common law of Pennsylvania was in conflict with that of the United States. However, this was not definitively established in a suit before the State Supreme Court until 1974 in *Rambeau*.

*Second*, the Pennsylvania Supreme Court made a distinction between technical violators and convicted violators. This was based on the statutes which defined the two categories and established the different treatment for the two types of violators. There were significant differences in the treatment accorded to members of each category, both with respect to hearing procedures, and with respect to the calculation of time served after return from parole.

*Third*, these statutory distinctions remained valid, in effect, and constitutional after *Morrissey*, except insofar as *Morrissey* required a revocation hearing be given to convicted violators in the same manner as already was provided for technical violators.

*Fourth*, prior to the date of plaintiff's first hearing, *Morrissey* had dictated that state parolees must receive certain minimum due process safeguards at revocation hearings, and the State Board of Probation and Parole had adopted regulations which outlined the procedures to be followed at such hearings, both for convicted and for technical violators. There was no question, at the time of the first hearing, that a *technical* violator should receive a full hearing

with specified safeguards prior to re-vocation of parole.

■ The foregoing is significant in the context of this suit, because plaintiff is asking us to find that he was denied due process by the lack of a hearing as to his status while a *technical* violator immediately after the Parole Board first received notice, albeit unofficial notice, of the vacation of his conviction. Under Pennsylvania law it is clear that the violation of the terms of an illegal sentence is an invalid basis for revocation of parole. *Commonwealth ex rel. Thor v. Ashe,* 138 Pa.Super. 222, 11 A.2d 173 (1940). There were, however, facts in this case upon which the Parole Board could have concluded, and ultimately did conclude that plaintiff was a technical violator. Plaintiff argues, in essence, that he should have had a full hearing on his status, without consideration by the Parole Board of the invalid conviction, within a short period after the unofficial notification of the issuance of the writ of certiorari, and that the delay of eighteen months before such a hearing violated his constitutional right to due process.

The primary defense to the entire suit was one of immunity on behalf of the Parole Board members. Failing this, the alternative defense was raised of absence of the requisite personal involvement in the offense for a finding of individual liability. Defendants also claim that because there was no *official* notification of the change in plaintiff's status until March 17, 1974, and because he was given a hearing shortly thereafter, no constitutional violation occurred.

■■ As requested at oral argument on the summary judgment motions, counsel for all parties have submitted supplemental briefs on the immunity question raised above. Plaintiff argues that the defendants were not protected by immunity for the claimed violation of plaintiff's civil rights—the omission

of a *Morrissey*-type hearing for eighteen months after first notification of vacation of the conviction which was the basis for revocation of parole. He admits that a decision not to reparole would have been protected as within the discretion of the Board members. But we are urged to find that the failure to hold a hearing at all, in direct violation of the dictates of *Morrissey,* is not a protected decision, nor is the failure to seek official verification of the grant of certiorari, after personal notification has been made, a matter of discretion and therefore within the ambit of protection. Defendants claim, to the contrary, that the Parole Board is a judicial or quasi-judicial body, that as such it is entitled to the full immunity privileges available to judicial bodies, and that that immunity, even after *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), is a sweeping absolute immunity for any actions within the judicial *function* or the scope of the judicial powers, as described in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and more recently in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Before reaching defendants' arguments, we must decide whether the complained-of omissions were in the ministerial or discretionary area, since there is no immunity whatsoever for ministerial actions. *See Scheuer v. Rhodes,* 416 U.S. 232, 239 n. 4, 250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Schmidt v. Degen,* 376 F.Supp. 664, 669 & n. 5 (E.D.Pa.1974) (post-*Scheuer*). If there is no immunity, our review of the factual situation is based upon principles which distinctly differ from those governing the factual examination if the Parole Board members were within their discretionary bounds when the alleged violations were committed. We find on the law and the facts of this case, that the omissions were in the field of ministerial duties, unprotected by privilege.[4]

---

4. Recent cases have discussed immunity for discretionary acts of parole board members.

The consensus seems to be that *Scheuer* did not limit immunity of judicial and quasi-ju-

The Parole Board has the exclusive power to grant parole and reparole, and to commit and recommit for violations of parole, all persons sentenced by a court of the Commonwealth of Pennsylvania to imprisonment in any prison or penal institution of the Commonwealth for a period in excess of two years. The two years is calculated by combining all individual sentences to which the individual is subject at the time. It may also supervise persons sentenced to less than two years when the sentencing judge so provides.[5] 61 P.S. § 331.17. As to those persons whom the Board is given the power to parole, it is the *duty* of the Board:

> upon the commitment to prison . . . to investigate and inform itself respecting the circumstances of the offense for which said person shall have been sentenced, and, in addition thereto, it shall procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections and environment of such person. The board shall further procure . . . such additional information regarding the crime for which sentence was imposed as may be available. *The board shall further cause* the conduct of the person while in prison and his . . . history and *his complete criminal record, as far as the same may be known, to be investigated and reported.* All public officials having possession of such records or information are hereby required and directed to furnish the same to the board *upon its request* and

without charge therefor. Said investigation shall be made by the board so far as may be practicable *while the case is recent* . . . .

61 P.S. § 331.19 (emphasis added). The power to recommit and to reparole is to be exercised

> in the same manner and with the same procedure as in the case of an original parole or recommitment . . . .

61 P.S. § 331.21.

It is an agreed fact that notice of vacation of plaintiff's conviction was placed in his parole file on or about January 8, 1974. It is not disputed that the notice was not the kind of official notice required by the Parole Board regulations. However, it is apparent from even a cursory review of the statutes that a procedure has been adopted in Pennsylvania to obtain official notification of facts which are within a prisoner's criminal records, and that that procedure is initiated at the request of the Parole Board. 61 P.S. § 331.19. When a parolee has been recommitted and is being reviewed for reparole potential, the situation is identical with regard to obtaining all information about his criminal record *"so far as is known,"* (*Id.* (emphasis added)), as it is for prisoners being reviewed for the first parole possibility. 61 P.S. § 331.21.

A discretionary function is one that involves some policy-making or judgmental element. *Schmidt v. Degen*, 376 F.Supp. 664, 669 (E.D.Pa.1974). *See also Barr v. Matteo*, 360 U.S. 564, 574–75, 79 S.Ct. 1335, 3 L.Ed.2d 1434

dicial (non-executive) officials performing discretionary actions within the functions properly committed to them, and that parole board officials serve in a quasi-judicial or even judicial capacity. However, the cases all make their holdings apply specifically to discretionary acts. Ministerial functions have not been held protected in any case to date. *United States ex rel. Nuble v. Boor*, Civil No. 74–1708 (E.D.Pa., Oct. 9, 1975); *Reiff v. Commonwealth*, 397 F.Supp. 345 (D.C.Pa.1975). *See also, Cruz v. Skelton*, 502 F.2d 1101 (5th

Cir. 1974); *Joyce v. Gilligan*, 383 F.Supp. 1028 (N.D.Ohio 1974), *aff'd mem.*, 510 F.2d 973 (6th Cir. 1975); *Bennett v. Gilligan*, 383 F.Supp. 1032 (N.D.Ohio 1974).

5. Which category the plaintiff belonged in is immaterial here, *since we know that the* Parole Board had taken jurisdiction of him after the conviction of the first offense. It was *that* sentence from which he had been paroled, and to which his status relates.

(1959). When the function is purely mandatory, in accordance with the direct and positive legal authority applicable to the individual's position, and without any discretion involved in its performance, the policy basis for immunity—the need to permit the government to govern without fear of liability for errors which may occur in the making of necessary decisions, see *Scheuer v. Rhodes*, 416 U.S. 232, 241, 94 S.Ct. 1683, 40 L. Ed.2d 90 (1974)—is no longer present. We hold that the statutory duty to verify information which is pertinent to the record of a parolee or potential parolee, and which has been brought to the attention of the Parole Board, is not a function involving policymaking or judgmental elements.[6] To the contrary, that function is one of the clearest examples of a ministerial duty that we can imagine. The failure to perform this duty, as explicitly and specifically mandated in the laws of Pennsylvania, is not protected from civil rights suits by any form of governmental immunity which has been suggested to us.

The second omission which is alleged to violate plaintiff's civil rights is the failure to hold a *Morrissey* hearing within a reasonable time after Mr. Jones' status was changed from that of a convicted violator to that of a technical violator. Defendants claim that the question is complicated by the (undisputed) fact that parole hearings were held on several occasions between January 8, 1973, and June 5, 1974, the date of a *Morrissey* hearing which considered all the information. Also, a hearing was scheduled for early May, 1974, before the entire Board, but was postponed when Mr. Jones refused to attend. Since none of the hearings prior to June, 1974, considered the plaintiff's situation on the basis of all available information, those hearings were all inadequate under both *Morrissey* and the relevant state

statutes. 61 P.S. §§ 331.19, 331.21. It is clear that all information would have been properly considered at the May hearing; the delay of the last month, therefore, is fairly attributable to plaintiff, and not to the Board.

A difficulty now emerges because the failure to hold a proper *Morrissey* hearing during the seventeen month delay has been attributed to the Board's failure to obtain the proper official verification of the grant of certiorari.

■ Defendants claim in their briefs, affidavits, and answers to interrogatories that changes such as a grant of certiorari must be presented on certain specified forms to be used in Board determinations. We have examined the regulations which pertain to actions of the Parole Board. 37 Pa.Code § 71.1 *et seq.* In the section dealing with general matters, the standard for utilization of documentary evidence is given:

> In hearings under the provisions set forth in §§ 71.3 and 71.4 of this Title (relating to arrest for a new criminal offense; conviction for a new criminal offense), documentary evidence and reports may be utilized, provided the hearing officer is satisfied as to their *authenticity, relevancy and accuracy.*

37 Pa.Code § 71.5(d) (emphasis added). We have not been shown any information from which to determine whether the Board members had any doubts as to the authenticity or accuracy of a letter *from the Clerk of Quarter Sessions* for Philadelphia County. The relevance to plaintiff's parole status is beyond argument. The clear stipulation of 61 P.S. § 331.19 that all available information be considered is the kind of directive that establishes ministerial duties. We do not find it credible that the Parole Board members had any *discretion* not to consider information of this type which was available and in plaintiff's file. As for the question

---

**6.** The mandatory duty differentiates this situation from that facing the court in *Joyce v. Gilligan*, 383 F.Supp. 1028, 1031 (N.D. Ohio 1974), *aff'd mem.*, 510 F.2d 973 (6th Cir. 1975) (" 'may consider all relevant factors' "; reliance on inaccurate F.B.I. report).

raised with respect to the acquisition of official certification of the grant of certiorari, the conclusion we reach here is that no immunity exists for the failure to act on information presented to the Board over a period of seventeen months, and there was a duty to obtain verification.[7]

■■ The corollary to our determination that both omissions of the Board were in the ministerial area is that the question of immunity, absolute or otherwise, for the actions of the Board members, is irrelevant to this action. At this point, therefore, we must examine the further defenses of lack of sufficient personal involvement and of good faith in the carrying out of the responsibilities of office. Also, there is a question of whether *respondeat superior* could serve as a foundation for a civil rights violation by the named defendants. Each presents substantial and material unresolved fact disputes. For example, plaintiff has admitted in his motion that he cannot yet establish the fact that the named individual defendants ever saw the letter from the Clerk of Quarter Sessions. Counsel for plaintiff argues (1) that it is admitted that the letter was received and made part of plaintiff's file on January 9, 1973, (2) that Mr. Jones' case was reviewed or reconsidered four times between January 9, 1973, and June 5, 1974, (3) that each review was followed by a Board meeting or executive sessions, and (4) that the individual defendants had a duty to attend such sessions. However, while the probability that the letter was reviewed is great, such a determination would involve a resolution of a still-at-issue material fact. That we are not permitted to do on a motion for summary judgment. *See* Rule 56(c) of the Federal Rules of Civil Procedure; *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817 (3d Cir.

1951). The same may be said of the *respondeat superior* issue. While the analysis outlined above would *imply* that defendants were involved, or should have been if they were properly performing their duties, and that they were responsible for overseeing the actions of subordinates so far as those actions relate to obtaining information for ruling on parole status, we believe it is necessary to trace the January 4, 1973, letter more carefully. We reach this conclusion in part because simple negligence is generally not sufficient to violate a person's civil rights, while reckless negligence might be. *See Reed v. Philadelphia Housing Authority*, 372 F.Supp. 686, 692 (E.D.Pa.1974). *See also Potts v. Wright*, 357 F.Supp. 215, 218 (E.D. Pa.1973):

> A defendant will not be held liable under the Civil Rights Act of 1871, 42 U.S.C. § 1983 unless the defendant was personally involved in causing the deprivation of a constitutional right or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights, and he is negligent in failing to take action to prevent the deprivations.

It will be important to our final determination whether there was the personal causation of deprivation of civil rights, or the actual knowledge of which *Potts* speaks. The facts upon which our conclusions would be drawn are not undisputed at this juncture. It may be that the information will be solely in the hands of the Parole Board, in which case their full cooperation in any subsequent discovery will be required. But at this point in time, we cannot enter summary judgment.

By virtue of our conclusions above, we will deny the motions for summary judgment filed by each party, and we will set time frames for subsequent litigation.

7. *See* text at n. 6, *supra.*