# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Sharpe, : 
        Petitioner : 
  : 
     v. : No. 885 C.D. 2014
  : Submitted: June 5, 2015
Pennsylvania Board of Probation : 
and Parole, : 
        Respondent : 


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                     FILED: September 14, 2015

Michael Sharpe petitions for review of an adjudication of the Pennsylvania Board of Probation and Parole (Board) denying his administrative appeal. Sharpe's appointed counsel, Somerset County Special Assistant Public Defender Marc T. Valentine (Counsel), has filed an application for leave to withdraw as counsel. Finding no error in the Board's decision, we affirm and also grant Counsel leave to withdraw.

On December 8, 1992, Sharpe was convicted of robbery, witness intimidation, terroristic threats and simple assault in the Philadelphia County Court of Common Pleas. He was sentenced to 5 to 15 years in state prison, with a maximum sentence date of December 16, 2008.

On April 26, 1999, Sharpe was paroled. He remained on parole until November 20, 2002, when he was taken into federal custody and charged with the

crimes of conspiracy to commit offenses against the United States, receipt of stolen firearms, possession of a firearm by a convicted felon, and assault on a United States employee. On November 25, 2002, while Sharpe was in federal custody, the Board issued a detainer warrant. Thereafter, in 2003, Sharpe was found guilty of the federal conspiracy and stolen firearms offenses. In 2004, he pleaded guilty to the federal charges of possession of a firearm by a felon and assault. Sharpe was sentenced to an aggregate term of 144 months by the United States District Court for the Eastern District of Pennsylvania on the new criminal convictions.

On April 8, 2013, the Federal Bureau of Prisons notified the Board that Sharpe would become available "for pick up" on the Board's detainer on May 24, 2013. Certified Record at 33. Sharpe was released to the Board and returned to SCI-Graterford on that day as scheduled. A parole revocation hearing was held on July 10, 2013.

At the hearing, Sharpe was represented by John L. Hekking, Esquire. The Hearing Examiner explained the purpose of the hearing was to determine whether Sharpe had a new criminal conviction. Parole Agent Grove[1] introduced Sharpe's state and federal criminal records into evidence. Sharpe verified the accuracy of his state and federal convictions.

At Sharpe's request, Attorney Hekking asked the Board to review documentation regarding Sharpe's hypertrophic cardiomyopathy, a potentially fatal heart condition. Sharpe complained that he was not receiving proper treatment for his condition from the medical staff at SCI-Graterford. Sharpe acknowledged,

---

[1] Grove's first name is not provided in the hearing transcript.

however, that he receives daily prescription medication for his condition, which is equivalent to the medication he received while he was in federal custody.

Attorney Hekking introduced into evidence 13 certificates of accomplishment Sharpe received in federal prison.[2]  Sharpe asked the Board to consider his positive behavior in federal prison.  Sharpe also discussed his family. He informed the Board that his wife has breast cancer and he has a 10-year-old daughter he has had little contact with because of his incarceration.  Sharpe expressed his desire to become a good parent.

The Board recommitted Sharpe as a convicted parole violator to serve 24 months backtime based on his new federal convictions.  Accordingly, the Board recalculated his maximum sentence date to be January 14, 2023.

Sharpe filed a request for administrative relief, asserting that a preliminary hearing must be held within 14 days of detention and a parole revocation hearing held within 120 days of detention.  Sharpe argued that the Board violated his right to due process by not giving him a hearing during the two years he was detained by federal authorities in Philadelphia, and by improperly extending his parole violation maximum date after taking him into custody ten years later.  Sharpe further claimed that the Board violated his right to equal protection because, while he was housed at the federal detention center, other inmates were returned to state institutions to deal with their parole situations, including parolees from out-of-state.  Finally, Sharpe contended that Attorney Hekking was intoxicated at the revocation hearing and provided ineffective representation.

---

[2] Sharpe completed courses in, *inter alia,* culinary arts, mentoring, parenting, cultural awareness and literacy.

The Board Secretary denied the request for administrative relief, explaining that a preliminary hearing is required only when a parolee is charged as a technical parole violator. Sharpe was charged as a convicted parole violator. The Secretary further explained that when a parolee is confined in a federal correctional facility, his parole revocation hearing must be held within 120 days of his return to a Pennsylvania correctional facility. Because Sharpe was not returned to the Board's custody until May 24, 2013, the July 10, 2013, revocation hearing was timely and there was no violation of due process.

As to the equal protection claim, the Secretary held that Sharpe presented no supporting facts. That federal authorities may have released other prisoners to the Board did not establish an equal protection violation. Finally, the Secretary rejected Sharpe's claim of ineffective assistance of counsel because Sharpe offered no evidence to support his claim that Attorney Hekking was inebriated at the hearing. Sharpe also offered no evidence that Attorney Hekking prejudiced Sharpe's defense by making errors or rendering a deficient performance.

Sharpe now petitions for this Court's review.[3] He claims: (1) the Board violated his right to due process by failing to hold his parole revocation hearing within 120 days of his return to State custody; (2) the Board violated his right to due process by not providing him with a preliminary hearing within 14 days of his arrest on the federal charges; (3) the Board violated his equal protection

---

[3] Our review is to determine whether substantial evidence supports the Board's decision, whether the Board erred as a matter of law, and whether the parolee's constitutional rights were violated. *Harden v. Pennsylvania Board of Probation and Parole*, 980 A.2d 691, 695 n.3 (Pa. Cmwlth. 2009).

4

rights by failing to hold his revocation hearing in a timely manner; and (4) Attorney Hekking rendered ineffective assistance.

Counsel seeks to withdraw from his representation of Sharpe on the basis that all of Sharpe's issues lack merit. On October 17, 2014, this Court ordered Counsel to advise Sharpe of his request to withdraw and of Sharpe's right to obtain counsel at his own expense or file a *pro se* brief to this Court. Counsel complied with this order on October 31, 2014. New counsel has not entered an appearance and Sharpe has not filed a *pro se* brief to this Court.

We begin with the technical requirements for a petition to withdraw legal representation. When counsel believes an appeal lacks merit, he may file a petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988). This Court has summarized the requirements established by *Turner* as follows:

> [C]ounsel seeking to withdraw from representation of a petitioner seeking review of a determination of the Board must provide a "no-merit" letter which details "the nature and extent of [the attorney's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless."

*Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009) (quoting *Turner*, 544 A.2d at 928). "Counsel must also send to the petitioner: (1) a copy of the 'no-merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Zerby*, 964 A.2d at 960. This Court then reviews the contents of the no-merit letter to determine whether it meets the requirements of *Turner*. *Id.* If it does, this Court conducts its own review of the merits of the parolee's appeal. If we agree with

counsel that the issues lack merit, then we will permit counsel to withdraw and deny relief. *Id.*

Here, Counsel's no-merit letter details his review of Sharpe's criminal record, addresses the issues raised by Sharpe and explains why the issues lack merit. Additionally, the record establishes that Sharpe received a copy of the no-merit letter and Counsel's petition to withdraw, and was advised of his right to proceed *pro se* or by new counsel. Thus, because Counsel has fulfilled the technical requirements for withdrawing his representation, we turn to the merits of Sharpe's appeal.

Sharpe's first contention is that the parole revocation hearing was untimely because it was not held within 120 days of his return to a State correctional facility pursuant to 37 Pa. Code §71.4(l)(i). Sharpe contends that the Board violated this regulation and his right to due process by waiting ten years to hold his hearing. The Board counters that Sharpe was in federal custody and outside the jurisdiction of the Department of Corrections from 2002 through 2013. His July 10, 2013, revocation hearing was timely because it was held within 120 days of his release from federal custody to SCI-Graterford on May 24, 2013.

The Board's regulations provide, in relevant part, as follows:

The following procedures shall be followed before a parolee is recommitted as a convicted violator:

(1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

(i) *If a parolee is confined outside the jurisdiction of the Department of*

6

> *Corrections, such as* confinement out-of-State*, confinement in a Federal correctional institution* or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), *the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.*

37 Pa. Code §71.4(1)(i) (emphasis added). Sharpe acknowledges he was in federal custody from the time of his arrest in 2002 until May 24, 2013, when he was transported to SCI-Graterford. Therefore, the Board is correct that his revocation hearing, which occurred on July 10, 2013, was timely. As such, Sharpe's first claim is meritless.

Sharpe's second claim is that the Board failed to provide him with a preliminary hearing within 14 days of his arrest on the federal charges. The Board responds that Sharpe was not entitled to a preliminary hearing in this case. We agree with the Board.

Pursuant to the Board's regulations, a parolee arrested on new criminal charges who is not being detained on those new charges, but is being detained solely on the Board's warrant, may be entitled to a preliminary hearing. *See* 37 Pa. Code §71.3 (setting forth procedures to "be followed if a parolee, *not already detained after appropriate hearings for other criminal charges* or technical violations, has been charged with a new criminal offense[.]") (emphasis added). Here, because Sharpe was detained by federal authorities on new criminal

7

charges, Section 71.3 is not applicable. Instead, Section 71.5(a) of the regulations applies:

> If the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth.

37 Pa. Code §71.5(a).

When Sharpe was returned to SCI-Graterford, the new charges were no longer "pending" because Sharpe had been convicted of them. He was returned to SCI-Graterford as a convicted parole violator. When "a parolee is recommitted as a convicted violator," he is entitled to only a revocation hearing. 37 Pa. Code §71.4, *supra* (requiring revocation hearing within 120 days of parolee's return to a State facility, along with right to notice of the hearing, right to counsel and right to present evidence). Therefore, Sharpe's claim that he was entitled to a preliminary hearing lacks merit.

Sharpe's third claim is that the Board's failure to hold his revocation hearing in a timely manner violated his right to equal protection under the law. In support, Sharpe contends that while he was in custody at the federal detention center in Philadelphia, other inmates were visited by their Pennsylvania parole agents and received revocation hearings. Sharpe's equal protection claim is grounded on this allegation of disparate treatment.

The right to equal protection under the law is guaranteed under the Fourteenth Amendment to the United States Constitution, and Article I, Sections 1 and 26 of the Pennsylvania Constitution.[4] Notably, this fundamental right does not

---

[4] Section 1 of the Fourteenth Amendment to the United States Constitution states:
**(Footnote continued on the next page . . .)**

prohibit the Commonwealth from classifying individuals and treating them differently based upon their differing circumstances. *Curtis v. Kline*, 666 A.2d 265, 267-68 (Pa. 1995). For example, this Court has held that the Board is not required to treat every parolee in an identical manner. *Jamieson v. Pennsylvania Board of Probation and Parole*, 495 A.2d 623, 629 (Pa. Cmwlth. 1985) (individuals who commit multiple offenses within a single jurisdiction could be treated differently for parole purposes than those whose offenses span multiple jurisdictions).

In reviewing equal protection claims, courts have identified three types of classifications of individuals: (1) classifications which implicate a "suspect" class or a fundamental right; (2) "sensitive" classifications implicating

---

**(continued . . .)**

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, § 1. Article I, Section 26 of the Pennsylvania Constitution provides:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

PA. CONST. art. I, § 26. Together, the above Pennsylvania constitutional provisions establish a right to equal protection under the laws equivalent to that established in the United States Constitution. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.),* 883 A.2d 518, 532 (Pa. 2005).

an "important" but not a fundamental right; and (3) classifications that fall into neither category. Classifications involving suspect classes, "such as race [and] national origin," are reviewed under a standard of strict scrutiny. *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 93 n.16 (3d Cir. 1998). "Sensitive" classifications, such as those based on gender and illegitimacy, receive heightened review. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Classifications that do not burden a fundamental or important right, or that do not involve a suspect or sensitive classification, are permissible so long as they are rationally related to a legitimate governmental interest. *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998).

As noted, Sharpe claims that he was treated differently than other inmates in federal custody who were released to attend their state parole hearings. Sharpe does not identify these other inmates or allege that they were similarly situated to him in terms of the charges or sentences they were facing. Sharpe does not allege that disparate treatment occurred based on race, national origin or any other suspect classification. Simply, Sharpe offers no evidence that his right to equal protection under the law was violated, and this claim lacks merit.

Sharpe's final claim is that Attorney Hekking was ineffective because he did not meet with Sharpe prior to the revocation hearing and was inebriated at the hearing. In order to establish a right to relief due to ineffective assistance of counsel, a parolee must show that: (1) counsel made errors of such a serious nature that the parolee was denied the representation guaranteed by law; and (2) counsel's errors were so serious that it is reasonably probable that, but for those errors, the outcome of the proceeding would have been different. *Vereen v. Pennsylvania Board of Probation and Parole*, 515 A.2d 637, 640 (Pa. Cmwlth. 1986). Sharpe fails to establish either element.

10

The transcript of the revocation hearing in no way suggests that Attorney Hekking was inebriated or incapacitated. Sharpe voiced no concerns about Hekking's representation during the hearing. Rather, Sharpe spoke in detail about his health, his family and the courses he completed in federal custody. There is simply nothing on this record to support Sharpe's charge. It is unfounded. Sharpe's claim of ineffective assistance of counsel lacks merit.

In sum, Counsel has fulfilled the technical requirements for withdrawing his representation, and our independent review of the record before the Board reveals that Sharpe's issues on appeal all lack merit. Accordingly, we grant Counsel's application for leave to withdraw and affirm the Board's decision.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Sharpe,                          :
           Petitioner      :
                           :
          v.                   :       No. 885 C.D. 2014
                           :
Pennsylvania Board of Probation          :
and Parole,                              :
           Respondent     :

## **O R D E R**

AND NOW, this 14th day of September, 2015, the order of the Pennsylvania Board of Probation and Parole, dated May 9, 2014, is AFFIRMED and the application of Marc T. Valentine, Esquire, for leave to withdraw as counsel is GRANTED.

_____
MARY HANNAH LEAVITT, Judge