# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Carmichael,            :
              Petitioner       :
                              :
        v.                    :    No. 721 C.D. 2024
                              :    SUBMITTED: May 6, 2025
                              :
Pennsylvania Parole Board,     :
              Respondent    :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED: June 5, 2025**

David Carmichael petitions for review of an order of the Pennsylvania Parole Board, which denied his administrative appeal of his recommitment as a convicted parole violator (CPV) and the recalculation of his parole violation maximum date (maximum date). Carmichael asserts that the Board failed to meet its burden of proving that his revocation hearing was timely. After review, we affirm.

In 2012, Carmichael was sentenced in York County to 10 to 20 years' incarceration on each of 2 counts of robbery with threat of serious injury, with the sentences to run concurrently. Certified Record (C.R.) at 1. The Department of Corrections (Department) calculated Carmichael's original minimum date as June 10, 2021, and his maximum date as June 10, 2031. C.R. at 2.

On June 25, 2021, Carmichael was paroled to a federal detainer, with his maximum date remaining at June 10, 2031. C.R. at 7. Carmichael was released

from his federal detainer on November 24, 2021, and the supervision of his parole was transferred to Washington, D.C., pursuant to the Interstate Commission for Adult Offender Supervision (ICAOS) and the Interstate Compact for the Supervision of Adult Offenders Act (Interstate Supervision Act).[1]  C.R. at 20, 21.  The conditions of Carmichael's parole included the following standard clause:

> If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

C.R. at 9.

On September 11, 2022, Carmichael was arrested on new criminal charges in Fairfax County, Virginia.  C.R. at 18, 43.  He pled guilty to assault and attempted robbery in the Circuit Court of Fairfax County (Virginia Court) on January 30, 2023, and remained incarcerated pending sentencing.  C.R. at 64-65.  On May 5, 2023, Carmichael again appeared in the Virginia Court where he was convicted and sentenced to 3 years' incarceration on the attempted robbery charge and 12 months' incarceration on the assault charge, with the sentences to run concurrently, to be followed by 2 years' probation.[2]  C.R. at 66-67.  The Virginia Court, however, suspended all but nine months' incarceration on the attempted robbery charge, C.R.

---

[1] The Interstate Supervision Act serves as the ratifying legislation for the Commonwealth's membership in the ICAOS, 61 Pa.C.S. §§ 7111-7115.

[2] While the Order from the Virginia Court indicates that Carmichael appeared for sentencing on May 5, 2023, the Order was not entered on the docket until May 22, 2023.  C.R. at 66-67.

at 67, and Carmichael was released to the community on probation supervision through Virginia on May 5, 2023.[3]

The Board received official verification of Carmichael's Virginia conviction on May 24, 2023, by which time he was no longer incarcerated. C.R. at 13. On July 27, 2023, the Board received a progress report from Washington, D.C., indicating that Carmichael's interstate parole supervision should be revoked because of his Virginia conviction, and the Board issued a warrant to arrest and detain him that same day. C.R. at 13, 20. Carmichael was taken into custody in Washington, D.C., on August 9, 2023, and was returned to Pennsylvania's custody at the State Correctional Institution at Smithfield (SCI-Smithfield) on August 14, 2023. C.R. at 20, 82.

The Board conducted a revocation hearing on October 5, 2023, at which Carmichael was represented by a public defender. C.R. at 71. Carmichael did not contest his Virginia conviction but instead objected on grounds that the revocation hearing was not timely because it was held more than 120 days after the Board received official verification of his Virginia conviction. C.R. at 51, 73. Carmichael testified that he was no longer incarcerated when the Board received the official verification, and he was in substantial compliance with his supervision up until he was detained on the Board's warrant in August 2023. C.R. at 56-58. If he was to be released, Carmichael would return to the same job and residence in Washington, D.C. C.R. at 58-60.

---

[3] We note that the Department's Supervision History indicates that Carmichael was released to probation supervision on May 27, 2023. C.R. at 20. However, this appears to be an error as multiple other documents in the record indicate that he was released on May 5, 2023, including ICAOS's Progress Report, C.R. at 26, and Carmichael's Virginia conditions of probation, C.R. at 69. Carmichael also testified that he was released immediately after his sentencing hearing on May 5, 2023, C.R. at 56, and the Board did not contest this statement or present any contradictory evidence.

Parole Agent Wertz submitted documentation confirming that the Board received official verification of Carmichael's Virginia conviction on May 24, 2023. C.R. at 19. Despite the fact that Carmichael was no longer in prison at that time, Agent Wertz argued that Carmichael was not available to the Board until he was returned to Pennsylvania on August 14, 2023 and, therefore, that the revocation hearing was timely because it was held within 120 days of Carmichael's return to SCI-Smithfield. The Hearing Examiner ultimately overruled Carmichael's timeliness objection. C.R. at 52,73.

The Board subsequently issued a decision recommitting Carmichael as a CPV to serve a recommitment period of 24 months, and recomputed his maximum date as July 24, 2033.[4] C.R. at 83-85. The Board declined to award Carmichael credit for the time he spent at liberty on parole because his Virginia conviction was for crimes that were the same or similar to his original offenses and were assaultive in nature. C.R. at 85-86.

Carmichael submitted a timely administrative remedies form contesting the Board's decision on grounds of timeliness and insufficient evidence. C.R. at 87. By final determination mailed on May 7, 2024, the Board denied Carmichael's request for administrative relief and affirmed its prior decision. Notably, the Board found that, pursuant to its regulations, the revocation hearing was timely because it was held within 120 days of the official verification of Carmichael's return to a state correctional facility. C.R. at 98-99 [citing 37 Pa. Code § 71.4(1)(i)]. Carmichael, through counsel, then petitioned this Court for review.

---

[4] The Board recomputed Carmichael's maximum date using his custody for return date of August 9, 2023, when he was arrested in Washington, D.C., thus giving him credit for all of the time he spent incarcerated solely on the Board's warrant. C.R. at 83.

4

The sole issue Carmichael raises before this Court is one of due process, specifically whether the Board erred in determining that his revocation hearing was timely.[5] *Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1044 (Pa. Cmwlth. 2018) ("Due process requires that a parolee receive a timely hearing after he is taken into custody for a parole violation."). To satisfy due process, the Board has issued regulations concerning the timeliness of a parole revocation hearing. The general rule established by these regulations with respect to CPVs is that the Board must hold a revocation hearing "within 120 days from the date the Board received official verification of the" guilty plea or verdict. 37 Pa. Code § 71.4(1).[6] However, this general rule is subject to what is known as the "custodial exception" which provides:

> (i) If a parolee is *confined outside the jurisdiction* of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*,[] 314 A.2d 842 ([Pa.] 1973),[7] the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

---

[5] Where a timeliness objection is raised, the Board bears the burden to prove, by a preponderance of the evidence, that a parolee's revocation hearing was timely. *Daniels v. Pa. Parole Bd.*, 326 A.3d 128, 132 (Pa. Cmwlth. 2024). "If the Board does not present substantial evidence to establish the timeliness of a revocation hearing, the parole violation charges are dismissed with prejudice." *Id.* [quoting *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1025 (Pa. Cmwlth. 2017)].

[6] The Board's regulations define "official verification" as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1.

[7] It is undisputed that Carmichael did not waive his right to a panel revocation hearing.

37 Pa. Code § 71.4(1)(i) (footnote and emphasis added). Section 71.5(a) of the Board's regulations further provides that "[i]f the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth." 37 Pa. Code § 71.5(a).

Carmichael argues that the custodial exception does not apply here because he was released from prison immediately after his sentencing by the Virginia Court on May 5, 2023. Because his revocation hearing was not held within 120 days of the Board's receiving official verification of his Virginia conviction, Carmichael maintains that it is untimely pursuant to Section 71.4(1).[8] The Board counters, simply, that the custodial exception applies here, claiming "[i]t is uncontested that Carmichael was incarcerated in the Commonwealth of Virginia and returned to a Pennsylvania state correctional institution on August 14, 2023." Board's Br. at 8. The revocation hearing was therefore timely under Section 71.4(1)(i) because it was held 52 days later.

Neither of these legal arguments is directly on point, nor does either account for all of the relevant facts and nuances of this case. While Carmichael was initially incarcerated on new charges in Virginia, he was released immediately upon his sentencing on May 5, 2023, and remained at liberty through the Board's receipt of official verification of his Virginia conviction later that month. Thus, he technically was not "confined outside the jurisdiction of the Department" for purposes of Section 71.4(1)(i). This fact alone, however, does not end our inquiry and is not outcome determinative for several reasons.

_____

[8] The time period from official verification on May 24, 2023, to Carmichael's revocation hearing held October 5, 2023, is 134 days.

6

First, the Board's regulations also specifically provide that "[i]n determining the period for conducting hearings under this chapter, there shall be excluded from the period, a delay in any stage of the proceedings which is directly or indirectly attributable to . . . [*t*]*he unavailability of a parolee* or counsel." 37 Pa. Code § 71.5(c)(1) (emphasis added). Section 71.5 of the regulations goes on to state that, "[n]otwithstanding [Section] 71.4, the Board may defer the revocation hearing until either partial or full service of a new sentence which a parolee receives." 37 Pa. Code § 71.5(e). In interpreting all of these provisions together, this Court has explained that

> under the [Board's] regulations, when a parolee is in federal custody, confined in a federal facility, *or is otherwise unavailable*, the Board's duty to hold a revocation hearing, or take other action beyond issuing a detainer, is deferred until the parolee is returned to a[n] SCI regardless of when the Board received official verification of a parolee's new conviction.

*Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1025 (Pa. Cmwlth. 2017) (emphasis added).

The need to take into consideration *all* of the Board's regulations pertaining to parole revocation hearings when considering the issue of timeliness is especially evident here, given the factual complexity of this particular matter. For example, when Carmichael was released from incarceration on May 5, 2023, his Virginia sentence was not yet complete. To the contrary, he was released to serve two years of probation, C.R. at 66-67, potentially implicating Section 71.5(e).

However, what truly distinguishes this case is the fact that prior to committing the new offenses in Virginia, Carmichael's supervision had been transferred to Washington, D.C. Because Pennsylvania and Washington, D.C., are

7

both part of ICAOS,[9] Carmichael and his supervision were subject to the Interstate Supervision Act and ICAOS Rules.[10] As this Court recently explained, "the ICAOS Rules are binding on compacting jurisdictions and have the force and effect of law on this Commonwealth and [Washington, D.C.]" *Iwanicki v. Pa. Parole Bd.* (Pa. Cmwlth., No. 97 C.D. 2024, filed June 4, 2025), slip op. at 12 (citing Section 7112 of the Interstate Compact Act, 61 Pa.C.S. § 7112).

Pertinent here is ICAOS Rule 5.102 governing the mandatory retaking of a parolee for a new felony or new violent crime conviction. Rule 5.102 provides:

> (a) *Upon a request from the receiving state, a sending state* **shall retake** *a supervised individual from the receiving state* or a subsequent receiving state *after the individual's conviction* for a new felony offense or new violent crime and:
>
> > 1. completion of a term of incarceration for that conviction; or
> >
> > 2. placement under supervision for that felony or violent crime offense.
>
> (b) When a sending state is required to retake a supervised individual, the sending state shall issue a warrant no later than 15 business days and, upon apprehension, file a detainer with the holding facility where the individual is in custody.

ICAOS Rule 5.102 (emphasis added). Section 4.3 of the ICAOS Bench Book further discusses a sending state's ability to retake a supervised individual and the applicable exceptions, explaining:

---

[9] The ICAOS has been enacted in all 50 states and Washington, D.C.

[10] The ICAOS Rules are available here: https://interstatecompact.org/icaos-rules (last visited June 4, 2025).

> Except for limited exceptions, the decision to retake lies solely at the discretion of the sending state. *See* [ICAOS] *Rule 5.101(a)*. However, if a supervised individual faces charges for a new offense in the receiving state, **the sending state may not retake the individual without prior consent from receiving state authorities** until the criminal charges are dismissed, the sentence is satisfied, or the supervised individual is released on supervision. *See* [ICAOS] *Rule 5.101-1*.

ICAOS Bench Book § 4.3 (italics in original, bold emphasis added).[11]

The record demonstrates that is exactly what occurred here. As explained in the Department's Supervision History, the Board maintained communication with Washington, D.C. authorities through the Interstate Compact Offender Tracking System throughout the relevant time frame. C.R. at 20. Importantly, the Board did not receive Washington, D.C.'s progress report and request to retake Carmichael until July 27, 2023. *Id.* Pursuant to the binding ICAOS Rules, the Board was therefore required to retake Carmichael after receiving that request. Further, when taking into consideration all of the above—namely, the ICAOS Rules, the Board's regulations, and Carmichael's new criminal charges—we conclude that he was not available to the Board prior to July 27, 2023. Accordingly, this period of time must be excluded from the requisite 120-day period, and the Board did not err when determining that Carmichael's revocation hearing was timely. It also bears noting that the Board acted with haste by issuing its warrant for Carmichael the same day it received Washington, D.C.'s request, well within the 15 business days required by ICAOS Rule 5.102(b).

---

[11] The ICAOS Bench Book is available here: https://interstatecompact.org/bench-book (last visited June 4, 2025).

Accordingly, the decision of the Board is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Carmichael,                               :
                    Petitioner                  :
                                                :
            v.                                  :     No. 721 C.D. 2024
                                                :
Pennsylvania Parole Board,                      :
                    Respondent                  :

# **O R D E R**

AND NOW, this 5th day of June, 2025, the decision of the Pennsylvania Parole Board is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita