J-A09005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EMMANUEL CASSIS, | |
| Appellant | No. 456 EDA 2014 |

Appeal from the Judgment of Sentence June 20, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0003389-2011
CP-51-CR-0003396-2011
CP-51-CR-0003397-2011
CP-51-CR-0003398-2011
CP-51-CR-0003399-2011

BEFORE:  BOWES, DONOHUE, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                          **FILED APRIL 28, 2015**

Emmanuel Cassis appeals from the judgment of sentence of sixty-nine and one-half to 139 years imprisonment that the trial court imposed after it found him in technical violation of his probation.  We reverse the trial court's order finding Appellant in violation of probation, vacate the judgment of sentence, and remand for violation of probation ("VOP") proceedings.

Appellant entered a negotiated guilty plea on April 25, 2011.  As part of the plea deal, Appellant agreed to plead guilty to seventeen counts of robbery, eleven counts of theft, and multiple firearms violations.  The Commonwealth agreed to recommend a sentence of seven and one-half to

fifteen years incarceration to be followed by twenty years of probation. Judge Chris R. Wogan accepted the plea and imposed the aforementioned sentence. In addition, Judge Wogan agreed to defer the date Appellant was required to begin his sentence until June 20, 2011, and directed Appellant to appear before him that day. Appellant failed to arrive at the courtroom to relinquish himself to authorities; his counsel did appear.

On that date, June 20, 2011, the court, without complying with any of the notice or procedural requirements necessary to conduct a VOP hearing, determined that Appellant violated his probation. Trial counsel objected to the proceeding going forward in Appellant's absence. The court overruled that objection and sentenced Appellant to sixty-two to 124 years imprisonment to run consecutively to his earlier seven and one-half to fifteen year sentence of incarceration. The court did not have the benefit of a pre-sentence report, since at the original sentencing, Appellant waived that requirement.[1]

The Commonwealth apprehended Appellant on June 27, 2011. Appellant was not informed of his new sentence at that time, nor did he contact his attorney. Accordingly, unaware of the new sentence, Appellant did not file a timely post-sentence motion or a direct appeal. Appellant subsequently filed a timely *pro se* petition for relief under the Post-

---

[1] Appellant was twenty-years old and had no prior criminal background.

Conviction Relief Act ("PCRA"), on June 15, 2012. Appellant retained private counsel, and counsel filed an amended petition on September 23, 2013. Therein, counsel asked that Appellant's direct appeal rights be reinstated and also sought Judge Wogan's recusal. Judge Wogan did not initially recuse himself, and Appellant filed two supplemental motions for recusal.[2] In one of those motions, Appellant averred that a sign was posted in Judge Wogan's courtroom which read, "69 ½ to 139 years—Beat that." Judge Wogan acknowledged that such a sign did exist, but he represented that he did not post it himself and, after seeing it a second time, had it removed.[3]

Ultimately, Judge Wogan elected to recuse himself. Judge Jeffrey Minehart then conducted a PCRA evidentiary hearing regarding trial counsel's failure to preserve Appellant's appellate rights and sentencing

---

[2] Judge Wogan conducted hearings on these motions. At a contentious December 16, 2013 hearing, Judge Wogan inappropriately vigorously cross-examined Appellant regarding matters that were based on his own *ex parte* and *sua sponte* investigation and questioning of warrant officers. Judge Wogan then held PCRA counsel in contempt because counsel refused to undergo a previously ordered mental health examination. He initially sentenced counsel to jail and a fine over counsel's objection that he was entitled to an attorney and a hearing. The assistant district attorney, however, also objected to the court's actions and the court agreed not to sentence PCRA counsel.

[3] An attorney present at a November 22, 2013 PCRA hearing in this case filed a declaration that referenced the sign and maintained that it was "displayed prominently near where attorneys are required to check in with the court staff and was easily read." Declaration of Attorney James A. Funt, at ¶ 12.

issues after the June 20, 2011 sentencing. Trial counsel acknowledged that he did not inform Appellant or his family of the new sentence. The PCRA court reinstated Appellant's direct appeal rights. This appeal ensued. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) decision. Therein, the court concluded that the underlying sentencing issues Appellant had alleged in his PCRA petition were waived because Appellant had not sought reinstatement of his right to file a post-sentence motion.

Appellant now raises three issues for this Court's review.

1. Did not the trial court err as a matter of law, abuse its discretion, and violate general sentencing principles when, following appellant's failure to turn himself in to begin serving a negotiated sentence of 7 ½ to 15 years, the court in absentia, conducted a cursory "violation of probation" hearing, and imposed a manifestly excessive and unreasonable sentence of 69 ½ to 139 years incarceration, which far surpassed what was required to protect the public, went well beyond what was necessary to foster appellant's rehabilitation, was not necessary to vindicate the authority of the court, was grossly disproportionate to the crimes, and was imposed without reference to any pre-sentence report or sufficient information to make an individualized sentencing decision?

2. Did not the trial court err as a matter of law, abuse its discretion and violate appellant's due process rights when it imposed a 69 ½ to 139 year sentence for an alleged technical violation of probation, where the court conducted the "violation hearing" without any of the required constitutional safeguards?

3. Did not appellant properly preserve and perfect these challenges for direct appeal, or if he did not, wasn't such a failure per se ineffective assistance of counsel, such that this Court should address the matters on direct appeal?

Appellant's brief at 3.

As we find Appellant's second issue dispositive, we need only address that issue. Appellant argues that the court erred by conducting "an apparent *in absentia* violation of probation hearing" without providing notice to Appellant of such a hearing and without hearing from any witnesses. He notes that under ***Morrisey v. Brewer***, 408 U.S. 471 (1972), a parolee has certain Fourteenth Amendment due process rights before the court can recommit that person. These protections have been extended into the violation of probation arena. ***See Commonwealth v. Stafford***, 29 A.3d 800, 802 n.1 (Pa.Super. 2011) (citing ***Morrissey***, ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973); ***Commonwealth ex rel. Rambeau v. Rundle***, 314 A.2d 842 (1973); and ***Commonwealth v. Davis***, 336 A.2d 616 (Pa.Super. 1975)).

Appellant asserts that an individual alleged to have violated his probation is entitled to two separate hearings. ***See Gagnon***, ***supra***. The initial hearing, commonly known as a ***Gagnon I*** hearing, "is a pre-revocation hearing to determine if probable cause exists that a violation was committed." Thereafter, "a ***Gagnon II*** hearing is conducted where the Commonwealth is required to establish that the defendant did violate his

parole/probation. *See Commonwealth v. Ferguson*, 761 A.2d 613 (Pa.Super.2000)." *Stafford*, *supra* at 802 n.1.

In *Davis* and *Ferguson*, *supra*, we outlined the distinctions between the two hearings. At a *Gagnon I* hearing, a probationer "is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Ferguson*, *supra* at 617 (quoting *Davis*, *supra* at 621). In contrast, a "*Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards[.]" *Id*. First, the court determines whether the probationer did violate probation. Subsequently, the court considers whether the probationer should be committed to prison "or should other steps be taken to protect society and improve chances of rehabilitation[.]" *Id*. (*Ferguson* and *Davis* quoting *Gagnon*, *supra* at 784).

In performing this review, due process requires similar protections afforded by the *Gagnon I* hearing. Specifically, the defendant must be given written notice of his alleged probation violation, disclosure of the evidence against him, an opportunity to be heard in person and present evidence, the right to confront and cross-examine adverse witnesses unless good cause exists for not permitting confrontation, a neutral hearing body, and a written statement by the factfinder regarding the evidence relied on

for violating the defendant's probation. **See Morrisey**, **supra** at 499; **Commonwealth v. Holder**, 805 A.2d 499, 504 n.7 (Pa. 2002); **Ferguson**, **supra** at 617-618; **Davis**, **supra** at 621.

Appellant adds that pursuant to Pa.R.Crim.P. 708(1), a court "shall not revoke such probation" without a hearing "at which the defendant is present and represented by counsel[.]" He points out that no notice was provided regarding a violation of probation nor was he present to be heard or provided with a written statement as to his violation. Continuing, Appellant highlights that the court did not hear from a probation officer nor was any evidence introduced. Rather, the court determined that Appellant's failure to appear was sufficient to warrant revoking Appellant's probation without notice and *in absentia*.

The Commonwealth counters that Appellant's issue is waived because his objection was not specific enough. We disagree. Here, counsel objected to the violation hearing being conducted without his client being present. The essentials of procedural due process are notice and an opportunity to be heard. Without prior notice of a violation hearing, the absence of the defendant encompasses both a lack of notice and an inability to be heard. Thus, it is evident that objecting based on Appellant's absence adequately encompasses these due process concerns. An objection need not be so specific and detailed as to amount to an oral briefing of the matter. Instead, counsel must adequately alert the court of the alleged error. **See In re**

*T.P.*, 78 A.3d 1166, 1171 (Pa.Super. 2013) ("If an assertion raised by a party can fairly be said to implicate a rule of law or legal precedent known by a court to be applicable, it is not foreclosed from considering that legal precept solely because that precise case, rule, or statute was not cited.").

Finding that Appellant adequately objected, we hold that the trial court erred in finding Appellant in violation of his probation without complying with the minimal due process protections necessary for violation of probation proceedings. Appellant was not given notice of a *Gagnon I* or *II* hearing or notice of his violation, nor was he provided an opportunity to be heard or be present.

Virtually none of the procedural safeguards required by both United States Supreme Court and Pennsylvania case law were adhered to by Judge Wogan. Since the court erred in proceeding in this fashion in Appellant's absence, he is entitled to new VOP proceedings. Therefore, we reverse the court's order finding Appellant in violation of probation, vacate his judgment of sentence, and remand for proceedings consistent with this memorandum.

Judgment of sentence vacated. Case remanded for additional proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015