J-A13034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY ROBERT BERKHOUS III | : | |
| | : | |
| Appellant | : | No. 1042 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 4, 2023
In the Court of Common Pleas of Warren County Criminal Division at
No(s):  CP-62-CR-0000460-2017

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: July 30, 2024**

Appellant, Jerry Robert Berkhous, III, appeals from the judgment of sentence imposed following the revocation of his sentence of probation. Appellant asserts that his due process rights were violated by the procedure used to determine he had violated the terms of his probation.  We affirm.

The revocation court set forth the procedural and factual background of the case as follows:

> On May 31, 2018, Appellant was sentenced to a period of [probation] for five (5) years with the sentence requiring … Appellant to comply with all rules and conditions pursuant to Local Rule 705 (copy attached).  On or about March 9, 2019, [Appellant's] supervision was transferred to Florida.  On February 8, 2022, Florida Probation Officer Todd Fontaine issued an Interstate Compact Action Request (**see** Exhibit A from August 2, 2023 hearing) where [Appellant] had failed to report for one month in January 2022 and had received new charges in Florida. A second Interstate Compact Action Request issued when [Appellant] failed to appear in [c]ourt in Florida on April 20, 2022[,] and had not appeared in the Florida probation department

in the months of January, February, or March[] 2022[,] with the last contact being a curfew check on February 20, 2022. (**see** Exhibit B from August 2, 2023 hearing). A progress report from Florida [was] initiated after the Florida [p]robation [o]fficer learned that Appellant had been arrested in Florida on November 5, 2021[,[1]] for grand theft and unarmed burglary when Appellant requested a travel pass and the officer performed a record's [*sic*] check. Appellant did not inform the probation officer but rather the information was discovered. (**see** Exhibit D from August 2, 2023 hearing). Finally, on January 4, 2022, Appellant was again the subject of a [p]rogress [r]eport when he tested positive for methamphetamine and amphetamines. (**see** Exhibit F from August 2, 2023 hearing). Acting upon Florida's communication, Warren County Probation issued a supervisor's warrant on April 21, 2022[,] for the following reasons: 1. failure to report as directed; 2. use of a controlled substance; 3. new criminal charges[;] and 4. absconding. The warrant was logged into National Crime Information Center [NCIC] on June 28, 2022[,] for full extradition to Pennsylvania. Prior to that date, on June 5, 2022, Florida Probation Officer Fontaine had contact with Appellant but unbeknownst to him, … while the warrant had issued, it was not yet in the national system so he did not act upon it. On or about May 8, 2023, Appellant was arrested on suspected probation violations within the State of Florida. Appellant arrived in Pennsylvania on June 4, 2023. Appellant's period of supervision would have expired on May 31, 2023, but he was held on the supervisor's warrant that issued [on] April 21, 2022. The Commonwealth acted with due diligence to resolve this matter once extradition to Pennsylvania occurred.

There is no testimony of record that establishes what happened at the **Gagnon I**[2] hearing. Neither the hearing officer [n]or Appellant testified regarding this proceeding[,] but Appellant's counsel argued that he had spoken with the Chief of Adult Probation Officer Michael Walters and informed him that he would be present for [Appellant's] **Gagnon I** probable cause hearing scheduled for 10 a.m. on June 7, 2023. On June 7, 2023, counsel for Appellant arrived at the Warren County Jail for the purpose of

---

[1] To be clear, Appellant was arrested on December 20, 2020 but his probation officer only found out about the arrest when Appellant asked for a travel pass in November 2021.

[2] **See Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

… Appellant's ***Gagnon I*** probable cause hearing. Counsel was informed that the hearing officer had already finished the ***Gagnon I*** hearing. The court reviews the law at this point. The relevant law concerning ***Gagnon I*** and ***Gagnon II*** violation of probation hearing[:] "When a … probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has been committed." ***Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa. Super. 2000). A ***Gagnon I*** hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: the Commonwealth must show probable cause that the violation was committed. ***Commonwealth v. Davis***, 336 A.2d 616, 621 (Pa. Super. 1975).

On June 30, 2023, this court held a hearing on … Appellant's Motion for the Immediate Release of the Defendant, which has [*sic*] denied on the same date and filed of record on July 1, 2023. This court held that[,] given … Appellant's past conduct of absconding and the upcoming ***Gagnon II*** hearing on August 3, 2023, the Motion for Immediate Release was denied. On August 3, 2023, the [c]ourt found that … Appellant had violated the terms of his probation, and thus revoked his probation and then resentenced him to probation with restrictive conditions for a period of five years[,] as Appellant indicated that he was an addict and needed help. The restrictive portion of the sentence had been served, so immediate release was imposed provided Appellant had a suitable probation plan. He was also afforded the opportunity to obtain a new drug and alcohol evaluation to secure additional treatment, if appropriate.

Revocation Court Opinion (RCO), 10/20/23, at 1-4.

Herein, Appellant challenges his revocation sentence via three inter-related issues, which he describes as follows:

I.      Whether the trial court erred in denying [Appellant's] motion for immediate release.

    a.      Whether [Appellant] should have been released on June 30, 2023, due to violations of his rights to due process of law?

- 3 -

> b. Whether the Commonwealth's delay in initiating probation revocation proceedings – until after his probation expired – was lawful?
>
> c. Whether any delay in the initiation of probation proceedings may be attributable to … Appellant?

Appellant's Brief at 9 (unnecessary capitalization omitted).

Preliminarily, we note that "in an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." *Commonwealth v. Wright*, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted).  Further,

> revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's discretion will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.  When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison.  In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation.  The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct.  Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated.  A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

*Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014) (cleaned up).

Because Appellant challenges the procedures used in determining that he had violated his probationary sentence, we enumerate the required procedures with particularity here. When a probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, called a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has occurred. ***See Ferguson***, 761 A.2d at 617 (citation omitted). When the revocation court finds probable cause, the court must hold a second, more comprehensive hearing, known as a ***Gagnon II*** hearing, before making a final revocation determination. ***Commonwealth v. DeLuca***, 418 A.2d 699, 672 (Pa. Super. 1980).

The ***Gagnon II*** hearing entails two decisions, with the first being a consideration of whether the established facts warrant revoking probation. ***Morrissey v. Brewer***, 408 U.S. 4710, 488 (1972). This determination is a wholly retrospective factual question: did the probationer in fact act in violation of one or more conditions of his probation? ***Gagnon***, 411 U.S. at 784. Further, the Commonwealth's burden to prove a probation violation is less onerous than the burden of proof at a criminal trial; a probation violation is proven by a preponderance of the evidence presented. ***Commonwealth v. Reed***, 285 A.3d 334, 337 (Pa. Super. 2022).

If it is determined that the probationer did indeed violate the conditions of his probation, the court must then consider whether the probationer must be recommitted to prison, or whether other steps should be taken to protect society and improve the probationer's chances of rehabilitation. ***Id.*** The

*Gagnon II* hearing affords the probationer greater due process protections than those afforded in a *Gagnon I* hearing, including: (a) written notice of the claimed violations, (b) disclosure to the probationer of the evidence against him, (c) the opportunity to be heard and to present witnesses and evidence, (d) the qualified right to confront and cross-examine witnesses, (e) a neutral and detached hearing body such as a traditional parole board, and (f) a written statement by the factfinder as to the reasons for revoking probation. *Ferguson*, *supra*.

Appellant phrases his claims in his brief to this Court as court error in denying his motion for immediate release. Appellant filed this motion on June 27, 2023, after his *Gagnon I* hearing but before his scheduled *Gagnon II* hearing. The motion was denied after a hearing by the order dated July 1, 2023. In the motion, Appellant maintained that his rights to due process were violated when his counsel was prevented from attending the *Gagnon I* revocation proceeding, that the revocation hearing was unreasonably delayed, and that his probation had expired by the time of the revocation hearing, rendering a new sentence unlawful. In essence, Appellant is challenging the procedure used to resentence him for violating the terms of the five-year probation sentence which had been initially imposed after his guilty plea on

May 31, 2018.[3]  We therefore review his claims regarding the *Gagnon I* and *II* hearings.

Appellant first challenges the denial of counsel at the *Gagnon I* hearing. Appellant notes that he had received proper notice of the *Gagnon I* hearing, Appellant's Brief at 26, and a copy of this notice is included in the certified record.  According to the notice, Appellant's hearing was scheduled to occur on June 7, 2023, at 10:00 a.m.  Counsel testified at the June 30 hearing, however, that when he appeared at the Warren County Jail, he was told that the time for the hearing had been moved to 9:30 a.m., and it was now concluded.  N.T., 6/30/23, at 8-15.  Appellant claims that his request to wait for counsel was ignored and that he was told by prison officials that "that's not how it works" or words to that effect.  Appellant's Brief at 14.  Appellant also argues that no evidence was produced at this hearing, and that the sum of the material presented at the hearing consisted of merely reading the allegations against him aloud.  *Id.* at 15.  Appellant refused to participate in the hearing and refused to sign the paperwork at the hearing's conclusion. *Id.*

Preliminarily, we note that there is no transcript or other recording of what transpired at the *Gagnon I* hearing in the certified record.  It is an

---

[3] Appellant's notice of appeal in this case, filed August 25, 2023, lists the order appealed from as that dated August 4, 2023, which is the date that the written judgment of sentence was filed after the revocation proceeding.  Our caption correctly notes that this appeal is from the judgment of sentence imposed at the revocation hearing.

appellant's duty to ensure that the certified record contains all materials necessary for purposes of appellate review. ***Commonwealth v. McIntyre***, 314 A.3d 828, 838 (Pa. Super. 2024). Further, the failure to ensure that the record provides sufficient information to conduct a meaningful review can result in a waiver of the issue sought to be reviewed. ***Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012). Without a record of the proceedings, we have no way to verify that Appellant asked for counsel at the ***Gagnon I*** hearing, or to review what evidence had been provided therein.

The United States Supreme Court held in ***Morrissey***, ***supra***, that a parolee is entitled to minimum due process protections before revocation because of the possible deprivation of liberty inherent in parole revocation proceedings. ***Morrissey***, 408 U.S. at 482. The High Court then extended this holding to probation revocation proceedings in ***Gagnon***, ***supra***. Moreover, these procedures have been routinely followed in Pennsylvania. ***Commonwealth ex rel. Rambeau v. Rundle***, 314 A.2d 842 (Pa. 1973). The ***Gagnon I*** hearing has been called "similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: The Commonwealth must show probable cause that the violation was committed." ***Id.***

Assuming that counsel's description of his encounter with authorities at the jail is accurate, we express our concern that some gamesmanship, wholly inappropriate in this context, may have taken place, and we cannot countenance such antics. However, while not approving of the procedure, we cannot grant Appellant relief because he was not prejudiced by the lack of

counsel at the hearing. The denial of counsel in a **Gagnon I** hearing may, in some cases, be considered harmless error. **Commonwealth v. Fowler**, 419 A.2d 34, 35 (Pa. Super. 1980).

Beginning our analysis, we note that, in order to be in violation of his probation, Appellant must have "violated one of the specific conditions of probation or parole included in the probation order" or "committed a new crime." **Commonwealth v. Cooper**, 277 A.3d 1190, 1194 (Pa. Super. 2022). Here, Appellant was charged with burglary and grand theft in Florida on December 20, 2020, although Pennsylvania authorities were not notified of such until April 2022. **See** Supervisor's Warrant for Probation/Parole Violations, 4/21/22, Docket Entry 28 (explaining that Appellant failed to report the arrest in 2020 when it happened and the existence of new charges had been discovered inadvertently while addressing Appellant's request to briefly leave Florida). Being arrested on new charges is a clear probation violation such that no amount of legal advocacy could have changed the outcome of the **Gagnon I** hearing. **See, e.g.**, **Commonwealth v. Kavanaugh**, 482 A.2d 1128, 1133 (Pa. Super. 1984) (holding that uncontradicted evidence of the appellant's arrest on new charges at the **Gagnon I** hearing was sufficient to show that the appellant violated his probationary sentence).

Moreover, Appellant was represented at the **Gagnon II** hearing by competent counsel who ably advocated for Appellant's interests and argued the facts and history of this case. Thus, the denial of counsel at Appellant's **Gagnon I** hearing was harmless beyond a reasonable doubt. **See Fowler**,

419 A.2d at 36 (finding that the denial of counsel at a ***Gagnon I*** hearing was harmless beyond a reasonable doubt: "It's clear that [the] appellant's ability to defend himself against the charges at the ***Gagnon II*** hearing was not impaired in any way by the denial of counsel at the ***Gagnon I*** hearing.").

After review, we find that Appellant's ability to challenge the probation revocation allegations in this case was not hampered by the lack of counsel at the ***Gagnon I*** hearing. As the ***Fowler*** Court noted, the denial of counsel at the ***Gagnon I*** hearing does not render the hearing a nullity; it makes it procedurally infirm. ***Id.*** Nonetheless, because Appellant's violation is clear on the record, and counsel was afforded at the subsequent ***Gagnon II*** hearing and argued on Appellant's behalf, we find no reversible error in Appellant's first issue.

Appellant next claims that the Commonwealth "engaged in extreme and inexcusable delay in initiating probation revocation proceedings that caused … Appellant a period of unnecessary incarceration and prejudice." Appellant's Brief at 28. Appellant's claim rests in large part on the fact that probation revocation proceedings did not occur until after his probation had expired. He also asserts that he was unnecessarily incarcerated from May 31, 2023 to August 4, 2023, a total of 65 days. ***Id***. at 29.

Pennsylvania Rule of Criminal Procedure 708 provides, in pertinent part:

**(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

> (1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and
>
> (2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B). Our courts have interpreted the directive to hold a hearing "as speedily as possible" a requiring a hearing within a reasonable time. *Commonwealth v. Saunders*, 575 A.2d 936, 938 (Pa. Super. 1990).

> Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay. The relevant period of delay is calculated from the date of conviction or entry of guilty plea [in the new case] to the date of the violation hearing.
>
> In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay. The court must analyze the circumstances surrounding the delay to determine if the Commonwealth acted with diligence in scheduling the revocation hearing.

*Commonwealth v. Clark*, 847 A.2d 122, 123-24 (Pa. Super. 2004).

Appellant argues that the delay in holding his probation revocation hearing was unreasonable, claiming that 382 days passed between the issuance of the supervisor's warrant on April 21, 2022,[4] and his arrest in Florida on the supervisor's warrant, which occurred on May 8, 2023.[5] Appellant also notes that his initial probationary sentence "expired" on May 31, 2023, or five years after it was imposed. Thus, he concludes, the

---

[4] Docket Entry 28.

[5] We have been provided no information about the result of the Florida case.

- 11 -

revocation hearing conducted on July 20, 2023, was not held "as speedily as possible" and that, because the hearing occurred after probation had expired, the court erred in finding him in violation of his probation.

Appellant's claims here are misguided. A sentence for a probation violation can be imposed after the expiration of the probationary period if the revocation is based on a violation which occurred during the probationary period. *Commonwealth v. Wright*, 116 A.3d 133, 137 (Pa. Super. 2015). Further, the courts of this Commonwealth have long rejected the notion that the sentence of one who absconds from a probationary sentence continues to run, as if it were being served, to the point of expiring on its scheduled expiration date. *Commonwealth v. Ortega*, 995 A.2d 879, 885 (Pa. Super. 2010), *disapproved of on other grounds by* *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. Super. 2019).[6]

Here, the Commonwealth alleged that Appellant committed various violations of the terms of his probation, including failing to report and submitting a positive drug screen, but the primary violation involves Appellant's new arrest. The arrest occurred on December 20, 2020, although Appellant failed to report it as he was required to do. At that time, Appellant

---

[6] We agree with the following quote from *Ortega*, as it is equally appropriate in this appeal: "Plaintiff desires to profit from the fact that he absconded and was delinquent on the date of expiration of his original sentence, and notwithstanding the subsequent conviction, he asserts that the Board lacked 'jurisdiction' to recommit him. There is no reason why a delinquent parolee should so profit, and we reject plaintiff's arguments." *Ortega*, 995 A.2d at 885(citing *Kuykendall v. Pennsylvania Board of Probation and Parole*, 363 A.2d 866 (Pa. Cmwlth. 1976)).

was still subject to the sentence imposed in 2018. Thus, as Appellant was still serving his sentence at the time of his arrest, it was proper for the court to consider whether this was a violation of his probation. *Ortega*, 995 A.2d at 885. The fact that Appellant's sentence was supposed to expire before the *Gagnon* hearings occurred is irrelevant to this determination. *Id.*

Moreover, when considering whether a period of delay in conducting a revocation hearing is unreasonable, we note that the delay can be measured in various ways. One method considers the time passed between the date of conviction or entry of the guilty plea on the new charges and the date of the revocation hearing. *See Commonwealth v. Bischof*, 616 A.2d 6, 8 (Pa. Super. 1992). Another method considers the interval between the hearing and when the probation officer for the case was charged with knowing that parole has been violated. *See Commonwealth v. Gochenaur*, 480 A.2d 307, 310 (Pa. Super. 1984). A third method considers the length of time between the probationer's being taken into custody and the revocation hearing. *Commonwealth v. Dorsey*, 476 A.2d 1308, 1310 (Pa. Super. 1984).

Appellant suggests that the delay in his case should be calculated based upon the date of the supervisor's warrant, or April 22, 2022, and that the hearing conducted on July 20, 2023, or 454 days later, was not accomplished as speedily as possible. But Appellant fails to account for his own actions which significantly contributed to this delay. Appellant received new charges in Florida in December 2020, although he successfully kept them hidden from

- 13 -

his probation officer until November 2021. Soon after the discovery of the new arrest in November 2021, Appellant appeared before his probation officer and provided a dirty urine sample. Appellant never appeared in the probation officer's office again. Appellant's new trial was scheduled for March 2022, but he failed to appear for that. Appellant continued his lack of communication with his probation officer, and the next formal interaction with authorities was when Florida authorities arrested Appellant on May 8, 2023. Appellant was then transferred to Pennsylvania on June 4, 2023, and the *Gagnon I* hearing was conducted July 20, 2023. The majority of the delay was caused by Appellant's own actions; first, he failed to timely inform authorities, as he was required to do, of the new charges. Next, after submitting a dirty urine to his probation officer, Appellant's whereabouts were unknown for many months. He cannot now complain about a delay that was caused by his own actions. This issue does not garner Appellant relief.

Finally, Appellant argues that he was not responsible for causing the delay in holding his probation revocation hearing. Appellant maintains that the Commonwealth failed to establish that he failed to report or absconded, as his reporting requirements were fluid or not well established. At the hearing, the Florida probation officer explained that Appellant failed to appear for his regular visit in January, February, and March of 2022. N.T., 8/3/23, at 12. The officer did find Appellant at his home in February during a curfew check, and spoke to him only once in June 2022. *Id.* at 12-15. On each occasion, the probation officer told Appellant to report to the probation office

- 14 -

the next day.  *Id.* at 36.  This was the last contact that the officer had with Appellant.  *Id.* at 27.

Appellant maintains that the Commonwealth did not establish that he had to report in person to his probation officer at all, meaning that his failure to appear for in-person visits did not constitute a violation.  The probation officer testified that his clients would be given an appointment reminder card at their monthly meeting for the next monthly meeting.  N.T., 6/30/23, at 29.  Thus, at the December reporting where Appellant provided a dirty urine, he was given a card with information about his appointment for January.  Since Appellant did not appear for his January appointment, he did not receive an appointment card for the February check-in.  *Id.* at 34.  Appellant claims now that this means he did not have to report to his probation officer at all after January, as he had no appointments.  But the probation officer further testified that both times that he spoke to Appellant at his home, in February and in June, he instructed Appellant to report the next day to the probation office, but Appellant failed to do so.  *Id.* at 36-37.  Thus, at a minimum, Appellant missed at least two appointments with his probation officer.  The only one responsible for Appellant's failure to report was Appellant himself.  Appellant is not entitled to relief on this issue.

In conclusion, Appellant has not shown error in the trial court's handling of his probation violation.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/30/2024